Randy STEENHOLDT, Petitioner,

v.

FEDERAL AVIATION
ADMINISTRATION,
Respondent.

No. 01–1331.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 7, 2002.

Decided Jan. 10, 2003.

Jason A. Dickstein argued the cause and filed the briefs for petitioner.

Kenneth G. Caplan, Special Attorney to the Attorney General, Federal Aviation Administration, argued the cause for respondent. On the brief was R. Brooke Lewis, Special Attorney to the Attorney General.

Before: SENTELLE, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Petitioner Randy Steenholdt challenges the decision of the Federal Aviation Administration ("FAA") not to renew his authority to examine certain aircraft repairs for compliance with the FAA's airworthiness regulations. Because the decision is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (1996), we have no jurisdiction to review the substance of the FAA's decision. Petitioner also argues that the Administration failed to follow its own procedures. Insofar as there was any such failure, it was without prejudice to any right of the Petitioner, and we therefore deny the petition for review.

I

The Federal Aviation Act ("FA Act") provides that the FAA Administrator "may delegate to a qualified private person ... the examination, testing, and inspection necessary" to issue certificates identifying aircraft as compliant with the standards set forth in the Federal Aviation Regulations, and may "rescind this delegation ... at any time for any reason." 49 U.S.C. § 44702(d) (1997). The Administrator has appointed a network of private individuals to serve as Designated Engineering Representatives ("DERs"), who perform cer-

tain examinations, tests, and inspections required to determine compliance with FAA airworthiness regulations. The Administrator has delegated the authority to select DERs to Managers of local Aircraft Certification Offices ("ACOs"). 14 C.F.R. § 183.11 (2002). DER appointments are for one-year periods and may be renewed for additional one-year periods at the Administrator's discretion. 14 C.F.R. § 183.15.

The FAA evaluates a DER's performance annually to determine whether that DER is performing at a satisfactory level. If the DER's performance is not satisfactory, the FAA may take corrective action ranging from counseling to nonrenewal. 14 C.F.R. § 183.15 lists the circumstances under which the FAA may choose not to renew a DER's designation. The regulation recites five specific bases for termination, and a sixth open-ended basis: "[f]or any reason the Administration considers appropriate." 14 C.F.R. § 183.15(6). If the DER requests review of that decision, a first-level review is conducted by the appointing ACO Manager. If the DER seeks further review, a second-level review is conducted by the Manager of the Directorate. *Designated Engineering Representative (DER) Guidance Handbook*, FAA Order No. 8110.37C ¶ 706 (Sept. 30, 1998).

In 1991, the Administrator issued Order 8130.24 "establishing ... procedures for the termination or nonrenewal of the certificate" for among others, a designated engineering representative. The order recites as a purpose that "these procedures are intended to ensure that due process is accorded before a final decision is made on termination or nonrenewal of the ... designations." FAA Order 8130.24, ¶ 1. The order, by its terms, specifies "conditions that may require the termination of a designation or delegation and list[s] the proce-

dures that field offices should employ to accomplish such actions." FAA Order 8130.24, ¶ 4(b). The order notes that the FAA developed the procedures therein because "designation holder[s] must be provided with adequate notice and afforded the opportunity to respond to the proposed action." FAA Order 8130.24, ¶ 4c.

The order directs that the appropriate FAA office will provide written notice to the DER of the proposed nonrenewal of the designation. The notice "shall include" among other things the "[s]pecific reasons for the proposed ... nonrenewal, including examples of unacceptable conduct, when applicable" and "permission to request reconsideration." FAA Order 8130.24, ¶ 6a(1).

Upon reconsideration, if the Manager of the ACO confirms the proposed nonrenewal, he will send a letter to the DER, clearly stating "the decision and the justification therefor" and responding "to each of the arguments presented by the [DER]." FAA Order 8130.24, ¶ 6a(4). The letter shall also state that the DER is permitted to request second-level review with the Directorate Manager responsible for the relevant ACO. *Id.*

If second-level review occurs and the Directorate Manager concurs in the decision not to renew the DER, the Directorate Manager will send a letter to the DER "reciting the final decision and justification." FAA Order 8130.24, ¶ 6b(2). The letter will "respond to each of the arguments presented by the [DER]." *Id.* In addition, the letter will state that the FAA's decision is final but that the DER may petition for review in a U.S. Court of Appeals within 60 days. *Id.*

In 1992, Petitioner Steenholdt received designation from the Chicago ACO as a Company DER for Northwest Airlines, authorizing him to operate as a DER only for Northwest Airlines. Gregory Michalik,

Airframe Branch Manager of the Chicago ACO, was appointed as Petitioner's FAA Advisor. Shortly thereafter, Petitioner received his Consultant DER authorization, which allowed him to offer DER services to others seeking such services. Michalik served as Petitioner's FAA Advisor for Petitioner's Consultant designation as well.

In November of 1995, oversight of Petitioner's work as a Consultant DER was transferred to Manzoor Javed. Petitioner and Javed did not get along well and had disputes about the quality of Petitioner's work. Some of Petitioner's clients began complaining about Javed, and Javed began writing unfavorable reviews of Petitioner's work. By September of 1997, the FAA had become concerned about Petitioner's work. Javed and ACO engineer Joe McGarvey reported that Petitioner had exceeded the authority of his designation by approving a repair for an engine anti-icing valve attachment when his authorization included only airframe repairs. Further, the ACO found that Petitioner did not address the problem fully in his submittals to the FAA.

In 1998, the ACO reported further problems with Petitioner's work. In February of 1998, Petitioner attended a counseling meeting regarding the quality of his work and his performance as a DER. Subsequently, Javed and McGarvey stated that Petitioner failed to properly apply the Federal Aviation Regulations, failed to show sound judgment in his submittals, and failed to include sketches and figures in his engineering analyses. They recommended that Petitioner attend another counseling meeting.

The ACO reported that Petitioner's work continued to deteriorate in 1999. Javed reported that Petitioner failed to show sound judgment or sound technical competence with respect to a project involving the landing weight of an aircraft.

Around this time, Javed recommended that Petitioner's designation be limited to repairs. (Originally, Petitioner had both repair and alteration authority.) McGarvey went so far as to recommend that Petitioner's Consultant DER designation not be renewed. The FAA did renew Petitioner's Consultant DER designation at this time but limited his authorization to repairs only.

In 2000, after further unsatisfactory reviews, Javed recommended nonrenewal of Petitioner's designation, stating that his "DER performance is lacking in spite of two face-to-face meetings within the last two years. He requires excessive oversight[,] compromising the purpose of the Designee System. In order to maintain the integrity of the Designee System, I recommend his DER appointment should not be renewed." (Letter from Prather to Dickstein of 1/11/2001, at enclosure 6 (DER Performance Evaluation Form for period from August 1999 to September 2000, completed by Javed).)

In September 2000, Petitioner's designation was renewed, but only for a period of three months. On October 26, 2000, Mary Ellen Schutt (Manager of the Airframe & Administrative branch of the Chicago ACO) notified Petitioner that she did not intend to renew his DER designation, effective January 1, 2001. She listed several areas in which Petitioner's performance was lacking during the previous year and during the three years prior. Schutt sent Petitioner a second letter, on November 1, 2000, highlighting specific problems with several of Petitioner's Engineering Authorization submittals.

On November 6, 2000, Petitioner through counsel requested reconsideration of Schutt's proposed nonrenewal. Along with this request, Petitioner filed a list of points and answers to the points raised in Schutt's two letters relating to the pro-

posed nonrenewal. Petitioner also attached letters from a few of his clients, indicating that difficulties with Javed were the cause of Petitioner's apparently deteriorating performance.

On November 20, 2000, Schutt sent Petitioner a letter extending Petitioner's DER designation through September 2001 while Petitioner's request for reconsideration awaited resolution. On January 11, 2001, Royace Prather, Manager of the Chicago ACO, sent a letter to counsel for Petitioner responding to a letter requesting reconsideration of the FAA's proposal not to renew Petitioner's designation. Prather's letter rejected the request and confirmed that the FAA would not renew Steenholdt's consultant DER appointment beyond its then-current expiration date of March 1, 2001. Prather reviewed Petitioner's performance and stated that despite meetings and counseling, Petitioner "has not acted on the counseling provided him and his performance is still lacking in the key areas we identified in our previous letter of October 26, 2000." (Letter from Prather to Dickstein of 1/11/01, at 1.) Prather's letter included as enclosures several letters and evaluations of Petitioner that detailed problems with Petitioner's performance. Prather included negative factual assertions about Petitioner that Schutt had not mentioned earlier in her recommendation of nonrenewal. Prather's letter also gave Petitioner notice that "standard procedure gives you permission to request a second level reconsideration" by the Directorate Manager responsible for the local ACO. (*Id.* at 5.)

Petitioner, through counsel, sought second-level review with the Manager of the Small Airplane Directorate. Petitioner requested that the Directorate overturn the decision of the local ACO or allow Petitioner to meet with the Directorate Manager and to file a written document in support of his position. (Petitioner's Notice of Appeal to Small Airplane Directorate of 2/12/01 (incorrectly marked as 2/12/00).) The Directorate Manager responded to Petitioner's counsel by letter dated February 22, 2001. The Directorate Manager stated that after reviewing all "available data on this matter," he "did not find sufficient evidence that the earlier decision for non-renewal be overturned." (Letter from Gallagher to Dickstein of 2/22/01.) The Directorate Manager offered Petitioner the opportunity "to meet with the Manager of the Small Airplane Directorate, or his representative, should [the Directorate Manager] not be available" and requested that Petitioner file his supporting document prior to any such meeting. (*Id.*)

Petitioner submitted a document in support of his position on March 23, 2001. On May 18, 2001, Petitioner, accompanied by counsel, met with the Directorate Manager's representative, Melvin Taylor, other ACO employees, and agency counsel. At this meeting, Petitioner submitted evidence in support of his position. Petitioner's counsel attempted to question Javed (who was in attendance); however Taylor explained that Petitioner would not be permitted to question any FAA employees. The FAA presented no evidence and made no argument. At the conclusion of Petitioner's presentation of evidence, Taylor directed Petitioner and his counsel to leave the room. Agency personnel remained in the meeting room to discuss Petitioner's case.

On May 29, 2001, the Directorate Manager informed Petitioner by letter that he was affirming the ACO's decision not to renew Petitioner's DER designation. The Directorate Manager stated that he "considered all the available information including that which [Petitioner] and [Petitioner's] attorney presented at the [May 18] meeting." (Letter from Gallagher to

Petitioner of 5/29/01, at 1.) The Director-ate Manager stated that he had not found sufficient evidence to overturn the decision of the Chicago ACO and that "the decision to non-renew has been confirmed by this office based on [Petitioner's] DER perfor-mance in the following key areas: Integri-ty, Sound Judgement [sic], Cooperative At-titude; Application of Regulations, Policy, and Guidance; Quality of Submittals; and Adherence to DER Procedures." (*Id.*) The letter referenced five previous letters in which Petitioner's deficiencies were dis-cussed at length.

Petitioner filed a timely petition for re-view with this Court on July 27, 2001. The FAA argues that this Court lacks jurisdic-tion to review its nonrenewal decision be-cause both the substance and the proce-dure of that decision are committed to agency discretion by law.

## II

### A

■ There is a strong presumption of reviewability under the Administrative Procedure Act ("APA"), *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967); however, the APA expressly precludes judicial re-view of agency action "committed to agen-cy discretion by law." 5 U.S.C. § 701(a)(2). Agency action is committed to agency discretion by law when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1984). If no "judicially manageable standard" exists by which to judge the agency's action, meaningful judicial review is impossible and the courts are without jurisdiction to review that action. *Id.* This Court has noted that judicially manageable standards

"may be found in formal and informal poli-cy statements and regulations as well as in statutes." *Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987). In determining whether agency statements create such a standard, the Court inquires whether the statements create binding norms by im-posing rights or obligations on the respec-tive parties. *Id.*

■ The FA Act very clearly commits the renewal/nonrenewal designation to agency discretion. Section 44702(d)(2) em-powers the Administrator of the FAA to rescind a DER designation "at any time for any reason the Administrator considers appropriate." The regulations promulgat-ed pursuant to the FA Act also give the Administrator of the FAA unfettered dis-cretion, in that they allow rescission of a designation "[f]or any reason the Adminis-tration considers appropriate." 14 C.F.R. § 183.15(d)(6). Although the exception to reviewability created by the "committed to agency discretion by law" is a "narrow exception" applicable only where "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citi-zens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1970) (internal quotations omitted), this is just such a case. With regard to the substance of the FAA's non-renewal decision, there is no law to apply. *See Adams v. FAA,* 1 F.3d 955, 956 (9th Cir.1993); *Greenwood v. FAA,* 28 F.3d 971, 974–75 (9th Cir.1994).

■ Petitioner argues that the conclu-sive language of section 701 of the APA applies only to bar review under the APA. Petitioner contends that section 46110 of the FA Act specifically provides for review of orders, like the one for which he seeks review in this case, "issued by the Secre-tary of Transportation [or the Administra-tor of the FAA]." 49 U.S.C. § 46110(a). He further contends that the "committed

to agency discretion" bar of section 701 of the APA has no applicability to this independent basis of review. We disagree. As the Ninth Circuit stated in *Adams*, "[a]lthough the chapter of the [FA] Act relevant to this case provides for judicial review of any order issued by the Board or Secretary of Transportation . . ., there is no judicially-manageable standard by which we may review the FAA administrator's decision not to renew Adams' designation." 1 F.3d at 956. That chapter simply outlines judicial review of FAA orders generally; 49 U.S.C. § 46110 identifies who can apply for review, in what court review may be had, deadlines for filing, and so forth.

Petitioner suggests that the "substantial evidence" standard in § 46110 provides us with a means to review the FAA's present decision. However, this argument begs the question: substantial evidence of what? For any decision made by the Administrator, there will always be substantial evidence that the decision was made "at any time for any reason." Because there are no constraints on the Administrator's discretion, there certainly are no judicially manageable standards by which to judge the Administrator's action. Petitioner's mistake is that he confuses the presence of a standard of review with the existence of law to apply. Were we to accept this as a basis for review of the Administrator's action, there would be "law to apply" in every agency action; no agency action could ever be committed to agency discretion by law because the "substantial evidence" standard of section 706(2)(E) of the Administrative Procedure Act applies generally to all agency action. Petitioner's interpretation would render section 701(a)(2) meaningless.

**B**

▮ In addition to arguing that the FAA erred in the substance of its decision, a subject over which we have no jurisdiction, Petitioner additionally asserts that the FAA failed to follow its own procedures – specifically, the procedures set out for the renewal of designations in FAA Order 8130.24. In support of our jurisdiction to review this claim, Petitioner relies upon *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The *Accardi* doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions. "Courts, of course, have long required agencies to abide by internal, procedural regulations . . . even when those regulations provide more protection than the Constitution or relevant civil service laws." *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1098 (D.C.Cir.1985) (referring to employment regulations); *see also American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539, 90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547 (1970). However, Petitioner's allegation of procedural error avails him nothing. Insofar as Petitioner demonstrates any violation of the procedures in Order 8130.24, such violations are without prejudice, let alone substantial prejudice.

Petitioner alleges several deficiencies in the FAA's review process. He contends that the FAA ignored the arguments he made at his first-level review, and objects to what he perceives as the addition of new complaints against him at his first-level review. Petitioner is incorrect. The FAA's series of letters to Petitioner, including the final order, identify Petitioner's deficiencies generally and give specific examples. The final order lists Petitioner's problem areas and refers back to the prior letters to set forth the basis of the FAA's final decision. In addition, the FAA clearly addresses Petitioner's argu-

ments in Prather's letter on first-level review. With regard to the allegedly new complaints lodged against Petitioner during first-level review, Petitioner claims that Prather raised issues about Petitioner's approval of a powerplant part and about Petitioner's approval of certain certification test plans. However, it appears that Petitioner may have raised both of these issues initially. (Letter from Dickstein to Small Airplane Directorate of 11/6/00, at 8 (raising powerplant part issue).) It is unclear whether Petitioner or the FAA first raised the certification test plan issue. Nevertheless, Petitioner has not shown that the addition of allegations has prejudiced him to any extent. Furthermore, nothing in the FAA's rules precludes the ACO Manager from basing his determination on reasons not stated in the original proposal of nonrenewal. *Fried v. Hinson*, 78 F.3d 688, 691 (D.C.Cir.1996).

With regard to second-level review, Petitioner again contends that the FAA failed to address his arguments. Petitioner also argues that the FAA failed to identify any specific reasons for its decision. These arguments fail for the same reasons as Petitioner's similar arguments with respect to the first-level review.

■ Petitioner also claims that the FAA failed to maintain a record of the second-level review meeting. In addition, Petitioner objects to the FAA refusal to permit him to question FAA personnel present at the second-level review meeting, to the Directorate Manager's failure to attend the meeting, and to what Petitioner perceives as *ex parte* communications among FAA personnel after the meeting.

With regard to these claims, it appears that Petitioner mistakes the FAA's review process for a formal adjudication. Petitioner identifies no FAA rule that gives him a right to question FAA personnel at review meetings, nor does he explain how

he is prejudiced by the Directorate Manager's absence from the meeting or by the alleged *ex parte* communications. Similarly, with respect to the possibly weak record of the second-level review hearing, Petitioner (who was present at the meeting) has presented no theory under which the weak record prejudiced his opportunity to access the procedures of the FAA.

■ In sum, the FAA acted in substantial compliance with its gratuitous procedural rules, and any departure therefrom was in no way prejudicial to Petitioner. Petitioner had notice of and an opportunity to respond to all allegations at every step in the FAA's process. Because Petitioner has not been prejudiced by the FAA's alleged departure from its gratuitous procedures, the *Accardi* doctrine – even if it provides an independent basis for review in other cases (a question we need not answer today) – does not give Petitioner a basis for review.

### III

In sum, we lack jurisdiction to review the FAA's decision not to renew Petitioner's DER designation. As to Petitioner's allegation of violations of the FAA's own procedure, we find none that cause him any substantial prejudice. Accordingly, we deny the petition for review.