# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

***

Argued February 14, 2006          Decided July 7, 2006

No. 05-1124

SECRETARY OF LABOR,
PETITIONER

v.

TWENTYMILE COAL COMPANY AND
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
RESPONDENTS

***

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

***

*Jack Powasnik*, Attorney, U.S. Department of Labor, argued the cause for petitioner. With him on the briefs was *W. Christian Schumann*.

*Ralph Henry Moore II* argued the cause for respondent Twentymile Coal Company. With him on the brief was *Karen L. Johnston*.

Before: RANDOLPH and GARLAND, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: This case represents the first time in more than twenty years[1] that the Federal Mine Safety and Health Review Commission has overturned a decision by the Secretary of Labor to cite the owner-operator of a mine, as well as its independent contractor, for safety violations committed by the contractor. This court has long recognized the Secretary's discretionary authority to cite the owner-operator, the independent contractor, or both for contractor violations. Because the Mine Act provides no meaningful standards against which to judge the Secretary's decisions regarding which party to cite, the Commission is generally without authority to review such decisions. We therefore grant the Secretary's petition for review and vacate the Commission's ruling.

I

The Mine Act requires the Secretary of Labor, acting through the Mine Safety and Health Administration (MSHA), to promulgate mandatory safety and health standards for the mining industry and to conduct regular mine inspections. 30 U.S.C. §§ 811, 813(a). If a MSHA inspector discovers conditions that violate safety or health standards, § 104 of the Act directs the Secretary to issue a citation or an order to the mine's "operator." 30 U.S.C. §§ 814(a). The Act defines an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a . . . mine *or* any independent contractor performing services or construction at such mine." 30 U.S.C. §

---

[1]*See Secretary of Labor v. Twentymile Coal Co.*, 27 F.M.S.H.R.C. 260, 278 (2005) (Jordan, Comm'r, concurring and dissenting).

802(d) (emphasis added). (The entities listed before the italicized "or" are also known as "production-operators."[2])

The Federal Mine Safety and Health Review Commission (FMSRHC) is an independent agency charged with adjudicating disputes under the Mine Act, including disputes over whether safety standards have been violated. *See* 30 U.S.C. §§ 815, 823. The Commission appoints administrative law judges (ALJs) to conduct trial-type proceedings to hear such disputes. *See* 30 U.S.C. § 823(d)(1). Any person aggrieved by a decision of an ALJ may request discretionary review by the Commission, *see* 30 U.S.C. § 823(d)(2)(A)(i), and any person aggrieved by an order of the Commission may obtain review in this court, *see* 30 U.S.C. § 816(a)(1).

Twentymile owns and operates the Foidel Creek Mine, an underground coal mine in Routt County, Colorado. In its capacity as owner-operator, Twentymile often uses independent contractors to undertake various projects at the mine. On August 14, 2001, Twentymile hired Precision Excavating, Inc., an independent contractor, to perform work on a refuse pile.

On August 30, 2001, MSHA Inspector Michael Havrilla conducted an inspection of the surface areas of the Foidel Creek Mine. During the course of his inspection, Havrilla observed that the equipment used by Precision's employees violated six safety standards. Among the violations were a leaking diesel fuel tank on a pan scraper, and a ten-by-ten-inch opening on a service truck's air compressor that permitted contact with the drive belts and pulley. When Havrilla discussed the violations with a Precision employee, he learned that Twentymile had not examined the contractor's equipment prior to its use at the mine.

---

[2]*See* Independent Contractors, 45 Fed. Reg. 44494, 44494 (July 1, 1980).

*See Secretary of Labor v. Twentymile Co.*, 25 F.M.S.H.R.C. 352, 356 (2003) (hereinafter *ALJ Decision*). Fearing that Precision's violations might augur an increase in contractor violations, Havrilla decided that issuing citations to both Precision and Twentymile was the best way to guarantee mine safety. *See id.* at 356-57.

Precision, the independent contractor, did not contest the citations and paid the $352 penalty assessed against it by MSHA. Twentymile, however, contested the citations and the attendant $900 penalty. In a hearing before an ALJ, Twentymile stipulated that the conditions described in the citations constituted violations of the Mine Act, but argued that it was improper for the Secretary to cite it for violations committed by Precision. *See id.* at 353.

On July 7, 2003, the ALJ ruled in the Secretary's favor. Citing Commission precedent, the ALJ held that, "in instances of multiple operators, the Secretary has wide enforcement discretion and 'may, in general, proceed against an owner-operator, his contractor, or both.'" *ALJ Decision*, 25 F.M.S.H.R.C. at 358 (quoting *Secretary of Labor v. Mingo Logan Coal Co.*, 19 F.M.S.H.R.C. 246, 249 (1997)). The ALJ found no abuse of discretion with respect to the Secretary's decision to cite Twentymile as well as Precision. *See id.* at 359. Although he recognized the nonbinding nature of enforcement guidelines issued by the Secretary to identify when to charge an owner-operator, the ALJ found that "the citations easily fit within" the guidelines. *Id.* at 359; *see id.* at 359 n.1 (referring to Enforcement Policy and Guidelines for Independent Contractors, App. A to Independent Contractors, 45 Fed. Reg. 44494, 44497 (July 1, 1980) (hereinafter *Enforcement*

*Guidelines*)).[3]  In particular, the ALJ found that "Twentymile's failure to inspect the equipment or ensure that the contractor inspected the equipment was an omission that contributed to the violations," and that "Twentymile exercised sufficient control over the scraper and service truck" to warrant a citation.  *ALJ Decision*, 25 F.M.S.H.R.C. at 360.  The ALJ also credited the MSHA inspector's statement that "he was concerned that safety hazards on contractors' equipment were not being adequately addressed" because the "cited conditions were rather obvious," and that "by issuing citations to Twentymile, the safety violations would get more immediate attention than if he only cited the contractor."  *Id.* at 359.

Twentymile appealed the ALJ's decision to the Commission.  *See Secretary of Labor v. Twentymile Coal Co.*, 27 F.M.S.H.R.C. 260 (2005) (hereinafter *Commission Decision*).  The company asserted that, under the Mine Act, an owner-operator is liable only for its own violations, and that the Secretary was therefore without authority to cite it for the violations of its independent contractor.  *See id.* at 263.  The

---

[3]The *Enforcement Guidelines* state:

> [A]s a general rule, a production-operator may be properly cited for a violation involving an independent contractor:  (1) when the production-operator has contributed by either an act or an omission to the occurrence of a violation in the course of an independent contractor's work, or (2) when the production-operator has contributed by either an act or omission to the continued existence of a violation committed by an independent contractor, or (3) when the production-operator's miners are exposed to the hazard, or (4) when the production-operator has control over the condition that needs abatement.

45 Fed. Reg. at 44497.

Secretary responded that court and Commission precedents were directly to the contrary. *See id.* She further argued that her decision to cite Twentymile for Precision's violations was not reviewable by the Commission because there was no meaningful standard against which to review her exercise of charging discretion. *See id.* at 265. In the event that the Commission deemed her enforcement decision reviewable, the Secretary argued in the alternative that the citation was not an abuse of discretion. *See id.* at 266.

The Commission reversed the ALJ's decision and vacated the citations issued to Twentymile. *See Commission Decision*, 27 F.M.S.H.R.C. at 277. Its opinion began by agreeing with the Secretary's (and the ALJ's) view that "the Secretary generally may proceed against an owner-operator, an independent contractor, or both, for violations by the independent contractor." *Id.* at 263-64. Nonetheless, the Commission rejected the Secretary's contention that her exercise of enforcement discretion was unreviewable. *See id.* at 265. And a majority of the Commission concluded that the Secretary had abused her discretion by citing Twentymile. *See id.* at 268. According to the majority, the Secretary's decision to cite the owner-operator was an abuse of discretion because it was not made for reasons "consistent with the purpose and policies of the Mine Act." *Id.* at 268 (internal quotation marks omitted). This was so, the Commission said, because: (1) "[t]he record show[ed] that the independent contractor was in the 'best' position to prevent the violations in question," *id.* at 268; (2) "Twentymile did not have a significant, continuing involvement in the work specifically being performed at the refuse pile," *id.* at 270; (3) Twentymile did not contribute to the violations "directly" or through a "significant" omission, *id.* at 270-71; and (4) none of the criteria listed in the Secretary's *Enforcement*

*Guidelines* was satisfied at "a significant threshold" level, *id.* at 273.[4]

The Secretary of Labor now petitions this court for review of the Commission's decision to vacate the citations filed against Twentymile. She contends that the Commission erred in holding that her decision to cite Twentymile for violations committed by Precision was reviewable; should we hold otherwise, the Secretary contends that her decision was not an abuse of discretion. Twentymile disputes both contentions, and it further challenges what it describes as the premise of the Secretary's nonreviewability argument: that she has authority to cite an owner-operator for safety violations committed by its independent contractor. Because the Secretary's authority is indeed the premise of her argument, we consider that issue first and then proceed to examine the issue of reviewability.

## II

We can make relatively short work of the question of the Secretary's authority to cite owner-operators for violations committed by their contractors because it is a question that this circuit has already answered. Indeed, Twentymile concedes that "decisions from this Court grant the Secretary the discretion to cite both the production-operator and the independent contractor for the violation of the independent contractor." Respondents' Br. 26. Although Twentymile urges us to rule to the contrary, such a disposition is plainly beyond the power of a panel of this court. *See, e.g., Ranger Cellular v. FCC*, 348 F.3d 1044, 1049-50 (D.C. Cir. 2003).

---

[4]The Commission relied on the final point notwithstanding its acknowledgment that "the Enforcement Guidelines are not binding on the Secretary." *Commission Decision*, 27 F.M.S.H.R.C. at 273 n.19.

8

This circuit's seminal opinion regarding the authority of the Secretary is *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533 (D.C. Cir. 1986) (Scalia, J.). There, the court observed: "The Mine Act declares that 'the operators' of the nation's mines have primary responsibility for preventing the existence of unsafe and unhealthful conditions, 30 U.S.C. § 801(e), and throughout the Act the entity charged with compliance is referred to simply as the 'operator.'" *Id.* at 535 (citing 30 U.S.C. §§ 814(a), 815(a), 820(a) & (i)). To determine the meaning of the term "operator," the court reviewed the legislative history of the Mine Act, first noting that the Federal Coal Mine Health and Safety Act of 1969 -- the Mine Act's precursor -- defined "'operator'" as "'any owner, lessee or other person who operates, controls, or supervises a coal mine.'" *Id.* (quoting 30 U.S.C. § 802(d) (1976)). The court next pointed out that, in *Bituminous Coal Operators Ass'n v. Secretary of Interior* ("*BCOA*"), 547 F.2d 240 (4th Cir. 1977), the Fourth Circuit "interpreted that definition of 'operator' to include independent contractors performing services at the production-operator's mine, and held that the Secretary had the power to cite the independent contractor, the operator, or both for independent contractor violations." 796 F.2d at 535. The court then noted that, when Congress enacted the Mine Act, it amended the definition of "operator" by adding (inter alia) the italicized phrase:

> "[O]perator" means any owner, lessee, or other person who operates, controls, or supervises a coal or other mine *or any independent contractor performing services or construction at such mine*[.]

30 U.S.C. § 802(d) (emphasis added); *see Cathedral Bluffs*, 796 F.2d at 535. Finally, *Cathedral Bluffs* explained: "The Senate Report accompanying the bill that became the Mine Act stated that the purpose of this amendment was to give statutory

expression to the doctrine of *BCOA*." 796 F.2d at 535 (citing S. REP. NO. 181, at 14 (1977)).

Two years after *Cathedral Bluffs*, in *International Union, United Mine Workers of America v. FMSHRC* ("*UMWA*"), we observed that "all of the courts that have had occasion to address the question have held that multiple operators are jointly liable under the Act[,] [o]r, put differently, the owner of a mine is liable without regard to its own fault for violations committed or dangers created by its independent contractor." 840 F.2d 77, 83 (D.C. Cir. 1988) (citing *Cyprus Indus. Minerals Co. v. FMSHRC*, 664 F.2d 1116, 1119 (9th Cir. 1981); *Harman Mining Corp. v. FMSHRC*, 671 F.2d 794, 797 n.2 (4th Cir. 1981); *BCOA*, 547 F.2d at 246). We found this holding to be in accord with both the legislative history (as reviewed in *Cathedral Bluffs*) and the statutory language as explained in *BCOA*:

> "Without exemption or exclusion, § 819 makes the operator of a coal mine in which a violation occurs subject to a civil penalty . . . . Th[is] section[], when read with the definition of operator, impose[s] liability on the owner or lessee of a mine regardless of who violated the Act . . . ."

*Id.* at 83 (quoting *BCOA*, 547 F.2d at 246).[5] We therefore "agree[d]" with those other courts, holding that the Mine Act

---

[5]Section 110 of the Mine Act, which under the Coal Act was 30 U.S.C. § 819 (1976), states:

The operator of a coal or other mine *in which a violation occurs* of a mandatory health or safety standard . . . shall be assessed a civil penalty by the Secretary. . . .

30 U.S.C. § 820(a) (emphasis added).

"assesses liability without regard to the individual operator's fault." *Id.* at 83-84. Moreover, "[s]ince liability under the Mine Act is without regard to fault," we declared that "the argument that only an operator directly responsible for the violation . . . can be liable . . . must be rejected." *Id.* at 84. And for the same reason, we must reject Twentymile's contention that it cannot be liable for the safety violations committed by Precision.

III

Having concluded that the Secretary of Labor has authority to cite an owner-operator for safety violations committed by its contractor, we next consider whether Twentymile may contest the Secretary's discretionary decision to do so. Because the reviewability of the Secretary's charging decision is a legal question, we decide the issue de novo. *See Secretary of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1099 (D.C. Cir. 1998).

A

Although there is a strong presumption that agency action is reviewable, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), the Administrative Procedure Act (APA) codifies the traditional exception that agency action is not reviewable when it is "committed to agency discretion by law." 5 U.S.C. § 701(a); *see Heckler v. Chaney*, 470 U.S. 821, 828 (1985). In *Overton Park*, the Supreme Court declared that this exception to the presumption of reviewability applies "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." 401 U.S. at 410 (internal quotation marks and citations omitted). As the Court subsequently explained in *Heckler v. Chaney*, "review is not to be had if the statute is drawn so that a court would have no

meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. at 830. "In such circumstances, the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002).

In determining "whether a matter has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Drake*, 291 F.3d at 70. Both the Supreme Court and this court have held that certain categories of administrative decisions are unreviewable. *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *Chaney*, 470 U.S. at 831; *Drake*, 291 F.3d at 70. In *Chaney*, for example, the Court held that agency decisions not to institute enforcement proceedings are presumptively unreviewable. *See* 470 U.S. at 831. Contrary to Twentymile's view, however, refusals to act are not the only kinds of administrative determinations that evade review.[6]

---

[6]*See, e.g., Lincoln*, 508 U.S. at 192 (holding that an agency's "allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion"); *Steenholdt v. FAA*, 314 F.3d 633, 634 (D.C. Cir. 2003) (holding that the FAA's decision not to renew an aircraft examiner's authority is nonreviewable); *Baltimore Gas & Elec. Co. v. FERC*, 252 F.3d 456, 459-60 (D.C. Cir. 2001) (holding that an agency's decision to reach a settlement is nonreviewable); *In re Sealed Case*, 131 F.3d 208, 216 (D.C. Cir. 1997) (holding that a federal prosecutor's certification that there is a substantial federal interest in a case, required to proceed against a juvenile in federal court, "implicates core prosecutorial judgment and discretion" and thus is normally "not subject to judicial review").

Indeed, with respect to criminal charging decisions, the Supreme Court has made clear that the government's decision "as to whom to prosecute" is generally unreviewable. *Wayte v. United States*, 470 U.S. 598, 607 (1985). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *see United States v. Armstrong*, 517 U.S. 456, 464 (1996) (same); *In re Sealed Case*, 131 F.3d 208, 214 (D.C. Cir. 1997) ("In the ordinary case, the exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable."). The Court explained the considerations behind this view in *Wayte*:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

470 U.S. at 607. These considerations apply as well to the administrative charging decisions of the Secretary of Labor. And we have previously found the traditional nonreviewability of prosecutorial charging decisions applicable to administrative cases. *See Drake*, 291 F.3d at 71 (holding that the "FAA's action in this case was . . . analogous to an exercise of 'prosecutorial discretion,'" and noting that "when prosecutorial discretion is at issue, the matter is presumptively committed to agency discretion by law"); *Beverly Health & Rehab. Servs., Inc. v. Feinstein*, 103 F.3d 151, 153 (D.C. Cir. 1996) (holding

that the NLRB General Counsel's decision to issue an unfair labor practice complaint is unreviewable because, inter alia, review would "invade the realm of prosecutorial discretion").

Of course, if the Mine Act provided a "meaningful standard against which to judge the agency's exercise of discretion," the situation would be different. *Chaney*, 470 U.S. 821, 830 (1985). If the Act provided such a standard, "whether this case involves a presumption of nonreviewability under *Chaney* or, instead, a presumption of reviewability under *Overton Park*," would not be dispositive. *Drake*, 291 F.3d at 72. That is because "*Chaney*'s presumption against judicial review may be rebutted where the relevant statute supplies meaningful standards to cabin the agency's otherwise plenary discretion," while *Overton Park*'s "presumption of reviewability is lost" where it does not. *Id.* at 71; *see Lincoln*, 508 U.S. at 190; *Chaney,* 470 U.S. at 832.

But the Mine Act does not provide a meaningful standard. Under the Act, the Secretary's charging discretion is as uncabined as that of a United States Attorney under the Criminal Code. Section 104(a) simply provides that "[i]f, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, . . . he shall, with reasonable promptness, issue a citation to the operator." 30 U.S.C. § 814(a). As we have noted, the Act defines "operator" as "*any owner*, lessee, or other person *who operates*, controls, or supervises a . . . mine *or any independent contractor performing services* . . . at such mine." 30 U.S.C. § 802(d) (emphasis added). Nothing in this language instructs the Secretary of Labor which of several jointly-liable operators to charge, any more than the Criminal Code tells a U.S. Attorney which of several co-conspirators to prosecute. Rather, the statute is "utterly silent on the manner in which the [agency] is to proceed against a particular transgressor." *Baltimore Gas & Elec. Co. v.*

14

*FERC*, 252 F.3d 456, 461 (D.C. Cir. 2001). And, because of that silence, the Secretary's charging decisions are unreviewable.[7]

The Commission, however, hears sounds in the silence. In support of its conclusion that the Secretary's charging decisions are reviewable, the Commission purported to discern the following standard: The Secretary's decision to cite an owner-operator, the Commission said, must be "made for reasons consistent with the purpose and policies of the Mine Act." *Commission Decision*, 27 F.M.S.H.R.C. at 266 (internal quotation marks omitted). That phrase is nowhere to be found in the Act itself, nor does it offer a particularly meaningful standard. Indeed, were we to regard it as one, we would have to hold all agency decisions under all statutes reviewable, as all legislation has "purpose[s] and policies." *Cf. Baltimore Gas*, 252 F.3d at 461 (holding that a requirement that an agency should protect "consumer interests" is merely a "boilerplate truism" and not a "discretion-restricting guideline"); *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (rejecting an argument that the Federal Aviation Act's "substantial evidence" provision provides a standard for reviewing the FAA's refusal to renew an examiner's authority because, if it did, "there would be 'law to apply' in every agency action" since the APA's substantial evidence standard "applies generally to all agency action").

---

[7]*See Lincoln*, 508 U.S. at 193-94 (holding unreviewable an agency's decision to discontinue funding a program where the statute did "not so much as mention" the program); *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003) (finding nonreviewability where the statute did nothing to "circumscribe[] the government's power to discriminate among issues or cases it will pursue" (internal quotation marks omitted)).

But the most pernicious aspect of employing this purported standard as a check on charging decisions is that it invites the reviewing body to substitute its views of enforcement policy for those of the Secretary, a power that -- as we discuss in Part III.B -- the Commission does not possess. In fact, that is precisely what the Commission did in this case. It found that the Secretary's decision to cite the owner-operator was not "consistent with the purpose and policies of the Mine Act" because: (1) "the independent contractor was in the 'best' position to prevent the violations in question," *Commission Decision*, 27 F.M.S.H.R.C. at 268; (2) "Twentymile did not have a significant, continuing involvement in the work specifically being performed at the refuse pile," *id.* at 270; (3) Twentymile did not contribute to the violations "directly" or through a "significant" omission, *id.* at 270-71; and (4) none of the criteria listed in the Secretary's enforcement guidelines was satisfied at "a significant threshold" level, *id.* at 273. Yet, because the Mine Act subjects an owner-operator to strict liability for its contractor's violations, *see supra* Part II, nothing in the statute bars the Secretary from charging an owner-operator even if it was not in the "best" position to prevent a violation, did not have a "significant, continuing involvement" in the contractor's work, and did not contribute "directly" or "significant[ly]" to the violation. And there is certainly nothing in the Mine Act that requires the Secretary to impose a "significant threshold" test on her own enforcement guidelines.

To be sure, "[t]his Court has noted that judicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes." *Steenholdt*, 314 F.3d at 638 (internal quotation marks and citation omitted). The Commission regarded the Secretary's *Enforcement Guidelines* as such a policy statement. *See Commission Decision*, 27 F.M.S.H.R.C. at 272-75 & n.19. But "[i]n determining whether agency statements create such a

standard," the operative question is "whether the statements create binding norms." *Steenholdt*, 314 F.3d at 638. And in *Cathedral Bluffs*, this court expressly held that the *Enforcement Guidelines* do "not establish a binding norm, but merely announce[] [the Secretary's] tentative intentions for the future, leaving himself free to exercise his informed discretion." 796 F.2d at 538 (internal quotation marks and citation omitted).[8]

In *Cathedral Bluffs*, the court -- as we do here -- reversed the Commission's dismissal of a citation issued by the Secretary to an owner-operator for a safety violation committed by its independent contractor. *See id.* at 534. As is the case in part here, the Commission's dismissal was based on its view that the Secretary's decision to cite was inconsistent with the *Enforcement Guidelines*. *See id.* In finding the *Guidelines* nonbinding, then-Judge Scalia's opinion for the court stressed that the "question pertains to an agency's exercise of its enforcement discretion -- an area in which the courts have traditionally been most reluctant to interfere." *Id.* at 538 (citing *Chaney,* 470 U.S. 821). "[T]he policies underlying that restraint," he declared, "extend as well to interference by a quasi-judicial agency that has no enforcement responsibilities, such as the Federal Mine Safety and Health Review Commission." *Id.* Those policies are as pertinent here as they were in *Cathedral Bluffs*.

---

[8]As discussed above, *see supra* note 4, the Commission applied the *Enforcement Guidelines* to the Secretary's decision to charge Twentymile notwithstanding its acknowledgment that "the Enforcement Guidelines are not binding on the Secretary." *Commission Decision*, 27 F.M.S.H.R.C. at 273 n.19.

17

B

The Commission held, and Twentymile asserts, that the case law regarding nonreviewability does not apply to this matter because of two specific provisions of the Mine Act. *See Commission Decision*, 27 F.M.S.H.R.C. at 265-66.

First, the Commission noted that cases such as *Chaney* and its progeny "involve preclusion of review under section 701(a)(2) of the Administrative Procedure Act," and that "section 507 of the Mine Act expressly provides that section 701 of the APA does not apply to Commission proceedings." *Id.* at 265 (internal citation omitted). Section 507 does indeed state that, "[e]xcept as otherwise provided in this chapter, the provisions of . . . sections 701-706 of Title 5 shall not apply to the making of any order, notice, or decision made pursuant to this chapter, or to any proceeding for the review thereof." 30 U.S.C. § 956.

Contrary to the view of the Commission, however, the fact that § 701(a)(2) itself is inapplicable does not mean that the principles underlying it are also inapplicable. Rather, as the Supreme Court has explained, "the Administrative Procedure Act . . . *codifies* the nature and attributes of judicial review, including *the traditional principle* of its unavailability 'to the extent that . . . agency action is committed to agency discretion by law.'" *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (quoting 5 U.S.C. § 701(a)(2)) (emphasis added). "In *Chaney*," the Court said, "we found that the type of agency decision in question has traditionally been committed to agency discretion, and . . . that the Congress enacting the APA did not intend to alter that tradition." *Id.* (internal quotation

marks omitted).[9]  Indeed, this court has rejected the claim that the "conclusive language of section 701 applies only to bar review under the APA."  *Steenholdt*, 314 F.3d at 639.[10]  Accordingly, the traditional principles of nonreviewability discussed in Part III.A are applicable here, notwithstanding § 507 of the Mine Act.

Second, the Commission contended that the Mine Act gives it express authority to review the Secretary's discretionary enforcement decisions and to formulate mine safety policy.  *See Commission Decision*, 27 F.M.S.H.R.C. at 266.  The Commission based this holding on Mine Act § 113, which provides that any person aggrieved by a decision of an ALJ may file a petition for Commission review on the ground that "a substantial question of law, policy or discretion is involved." 30 U.S.C. § 823(d)(2)(A)(ii)(IV).

This circuit, however, has already rejected the contention that § 113 gives the Commission authority to determine policy issues.  *See Energy West Mining Co. v. FMSHRC*, 40 F.3d 457, 463 (D.C. Cir. 1994).  In *Energy West*, we found that § 113 "merely states" the grounds upon which a "petitioner may call upon the Commission's power of discretionary review over a decision of an administrative law judge."  *Id.* at 464.  And we found nothing in the section to "offer[] a convincing argument

---

[9]*See Lincoln*, 508 U.S. at 191 ("[W]e have read § 701(a)(2) to preclude judicial review of certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion." (internal quotation marks omitted)).

[10]*See Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001) (holding that the "presumption of agency discretion recognized in *Chaney* has a long history and, contrary to the [plaintiff's] assertion, is not limited to cases brought under the APA").

that Congress intended to deprive the Secretary of the deference which we [have] previously afforded its interpretations of the Act." *Id.* In *Secretary of Labor v. Mutual Mining, Inc.*, the Fourth Circuit agreed: "[T]o say that the Commission reviews cases involving questions of policy is not to say that it is the final arbiter of such policies. Nor is it to say that the Commission's interpretation of the statute trumps a reasonable interpretation put forth by the Secretary." 80 F.3d 110, 114 n.3 (4th Cir. 1996) (citing *Energy West*, 40 F.3d at 463-64).

Both *Energy West* and *Mutual Mining* are part of a line of cases that anticipated, and then followed, the Supreme Court's decision in *Martin v. Occupational Safety & Health Review Commission*, 499 U.S. 144 (1991).[11] *Martin* involved review under the Occupational Safety and Health Act ("OSH Act"), in which, like the Mine Act, "Congress separated enforcement and rulemaking powers from adjudicative powers, assigning these respective functions to two *different* administrative authorities." *Id.* at 151. Under the OSH Act, the former functions are assigned to the Secretary of Labor and the latter to the Occupational Safety and Health Review Commission (OSHRC); under the Mine Act, the former are again assigned to the Secretary of Labor and the latter to the Federal Mine Safety and Health Review Commission (FMSHRC). Under this "split enforcement" structure, the Court held, "enforcement of the Act is the sole responsibility of the Secretary." *Id.* at 151-52 (internal quotation marks omitted). Moreover, since "Congress did not invest the Commission with the power to make law or policy by other means, we cannot infer that Congress expected

---

[11]*See Cathedral Bluffs*, 796 F.2d at 537 n.2; *Secretary of Labor v. Cannelton Indus., Inc.*, 867 F.2d 1432, 1435 (D.C. Cir. 1989); *RAG Cumberland Res. LP v. FMSHRC*, 272 F.3d 590, 595-96 (D.C. Cir. 2001); *Secretary of Labor v. Excel Mining, LLC*, 334 F.3d 1, 5-6 (D.C. Cir. 2003); *see also Mutual Mining*, 80 F.3d at 114-15 & n.3.

the Commission to use *its* adjudicatory power to play a policymaking role." *Id.* at 154.

We have previously, and repeatedly, applied *Martin*'s analysis to the Mine Act.[12] We do so here as well. As is true under the OSH Act, "enforcement of the [Mine] Act is the sole responsibility of the Secretary," 499 U.S. at 152 (internal quotation marks omitted), and the Commission has no "policymaking role," *id.* at 154. Instead, "Congress intended to delegate to the Commission the type of nonpolicymaking adjudicatory powers typically exercised by a *court* in the agency-review context." *Id.* "Under this conception of adjudication, the Commission is authorized to review the Secretary's interpretations only for consistency with the regulatory language and for reasonableness." *Id.* at 154-55. And, like a court, the Commission is not as a general matter authorized to review the Secretary's exercise of prosecutorial discretion.

IV

We conclude that the Commission is generally without authority to review the Secretary's discretionary decisions regarding whether to cite owner-operators, their independent contractors, or both for safety violations committed by the independent contractors. Such decisions are not, of course, wholly immune from review. The Secretary's discretion, like that of a prosecutor, remains "subject to constitutional constraints," including those "imposed by the equal protection

---

[12]*See, e.g., Secretary of Labor v. Twentymile Coal Co.*, 411 F.3d 256, 261-62 & n.1 (D.C. Cir. 2005); *Excel Mining*, 334 F.3d at 167-68; *RAG Cumberland*, 272 F.3d at 595-96; *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000).

component of the Due Process Clause of the Fifth Amendment." *Armstrong*, 517 U.S. at 464.

Moreover, the Commission retains authority to adjudicate -- subject to the appropriate standard of review[13] -- whether safety violations have in fact occurred. *See* 30 U.S.C. §§ 815(d), 823(d). In this case, however, Twentymile has stipulated that the conditions cited by the Secretary constitute violations of safety standards. *See ALJ Decision*, 25 F.M.S.H.R.C. at 353. We therefore grant the Secretary's petition for review. The decision of the Commission, which reversed the decision of the ALJ and vacated the citations issued to Twentymile, is itself vacated and the citations are reinstated.

*So ordered.*

---

[13]As we have explained: "Under the statutory scheme, the Commission is required to accord deference to the Secretary's interpretations of the law and regulations. And while it may reverse a decision by an ALJ for legal error, the Commission must uphold an ALJ's factual determinations if they are supported by substantial evidence." *RAG Cumberland*, 272 F.3d at 595 (internal quotation marks and citations omitted).