# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 5, 2012          Decided April 17, 2012

No. 11-1303

AMES CONSTRUCTION, INC.,
PETITIONER

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
AND SECRETARY OF LABOR,
RESPONDENTS

———

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

———

*Mark N. Savit* argued the cause for petitioner. With him on the briefs were *Caroline A. Davidson-Hood* and *Gregory Louer*.

*Robin A. Rosenbluth*, Senior Attorney, U.S. Department of Labor, argued the cause for respondent. With her on the brief was *W. Christian Schumann*, Counsel. *John T. Sullivan*, Attorney, Mine Safety and Health Review Commission, entered an appearance.

Before: GARLAND, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: This case arises out of a tragic accident in which William Kay, an 81-year-old truck driver for Bob Orton Trucking Co., was killed by a large pipe that fell off of his truck during a delivery of such pipes to the Kennecott Utah Copper Mine. Petitioner Ames Construction, Inc. is an independent contractor hired by the mine's owner, Kennecott Utah Copper Corporation, to construct a tailings dam; it was responsible for receiving deliveries of materials such as the pipes in question. It is uncontested that Kay himself was negligent and equally uncontested that Ames was not his employer. Neither the Secretary nor the Commission relies on any finding of negligence on the part of Ames. The Mine Safety and Health Administration ("MSHA") cited Ames for a violation of the Federal Mine Safety and Health Act of 1977, Pub. L. No. 95-164, 91 Stat. 1290 (codified at 30 U.S.C. §§ 801 *et seq.*).

On review, the Federal Mine Safety and Health Review Commission upheld the citation. It found that Ames, though not the principal operator of the mine, "supervised a process, the unloading of pipes," and that as a supervisor of that process it could be liable without fault for violations occurring in the process. See *Secretary of Labor v. Ames Construction, Inc.*, Docket No. WEST 2009-693-M, 2011 WL 3794313, at *4-5 (FMSHRC July 25, 2011). Ames challenges that conclusion both as a matter of statutory interpretation and on the facts. Though the statutory structure invites considerable confusion, we find the Commission's conclusion consistent with the act, and we find substantial evidence in support of its necessary factual findings.

3

\* \* \*

We first summarize the facts and procedural history. On October 29, 2008 Kay arrived at the Kennecott Tailings Facility to deliver nine large (50-foot long, 3000-pound) pipes to be used in the tailings dam that Ames was building. Pursuant to Kennecott's internal policy and an MSHA order relating to Kennecott's use of unbermed roads, Kay and his truck were escorted by three Ames employees to an unloading location, where he was told to "wait right here" with one of the Ames employees (Juan Florez) while the others went to get a forklift. A safety document from the pipe manufacturer, found in Kay's truck, warned that the straps on the pipes should not be loosened or removed until the load had been checked for stability. At a point when Florez's attention was on the road, Kay began loosening the straps on the truck; one of the pipes fell and crushed him.

An MSHA inspector investigated the accident and cited Ames for violating 30 C.F.R. § 56.9201, which prohibits the unloading of supplies in a hazardous manner. MHSA Citation No. 6328009 (Dec. 11, 2008), J.A. 1. Although the ALJ who initially considered Ames's challenge sustained the citation on the theory that Orton (Kay's employer) was Ames's subcontractor, see *Secretary of Labor v. Ames Construction, Inc.*, 32 FMSHRC 347, 350-53 (2010), we need not dwell on that theory, as the Secretary repudiated it before the Commission. The latter, as we said, affirmed on the view that as supervisor of "a process, the unloading of pipes," Ames was liable without regard to fault for violations occurring in that process. Ames petitioned this court for review under 30 U.S.C. § 816(a)(1).

4

* * *

Section 110(a) of the act creates liability for operators of coal or other mines:

> The operator of a coal or other mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter, shall be assessed a civil penalty by the Secretary. . . .

30 U.S.C. § 820(a).  Section 3(d) of the act defines who is an operator:

> "operator" means [1] any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or [2] any independent contractor performing services or construction at such mine.

30 U.S.C. § 802(d) (bracketed numbers added).  In *Secretary of Labor v. Twentymile Coal Co.*, 456 F.3d 151 (D.C. Cir. 2006), we adopted a regulatory usage characterizing the first set of operators—those who operate, control, or supervise a mine—as "production-operators."  *Id.* at 152; see 30 C.F.R. § 45.2(d) (definition of "production-operator").

Ames concedes that it is an operator under the second part of § 3(d), as an "independent contractor performing services."  See Petitioner's Br. 10.  But it contends that "[o]perators . . . are not all alike," *id.*, and that only "production-operators" can be cited for violations without fault.  It is quite true that our cases finding § 110(a) to create liability without regard to fault have applied that proposition exclusively to production-operators.  See, e.g., *International Union, United Mine Workers of America v. FMSHRC*, 840 F.2d 77, 83-84 (D.C. Cir. 1988) ("*UMWA*").  Indeed, we said recently:  "[A]n entity cannot be held liable [under § 110(a)] *unless* it 'operates, controls, or supervises' the mine,"

*Secretary of Labor v. National Cement Co.*, 573 F.3d 788, 795 (D.C. Cir. 2009) (emphasis added), incorporating verbatim the first part of § 3(d)'s definition. But we need not decide here whether liability without fault could ever be assigned to an operator satisfying only the second part of § 3(d). The Commission concluded, and the Secretary argues here, only that independent contractors *who exercise supervision or control*—in other words, ones also covered by the production-operator portion of § 3(d)—are so liable. As long as the Secretary's and Commission's conclusions as to Ames's exercise of supervision or control are sustainable, Ames's argument is of no avail.

Putting aside for the moment the purely factual aspect of the Commission's finding, we address Ames's conceptual attack on its liability as one "who operates, controls, or supervises a . . . mine" under § 3(d). First, it says that the phrase "*the* operator" in § 110(a) (emphasis added) must refer to a single (production-) operator. As a simple matter of language it is hard to see why use of the definite pronoun necessarily entails a one-mine, one-operator principle. It is true that our cases reading the provision to allow joint and several liability among multiple operators, see *Twentymile Coal Co.*, 456 F.3d at 155;*UMWA*, 840 F.2d at 83-84, were ones where one firm was a production-operator and another merely "perform[ed] services or construction." But the Ninth Circuit has explicitly rejected the notion that there can be only one production-operator at a mine, *Blattner v. Secretary of Labor*, 152 F.3d 1102, 1108 (9th Cir. 1998), and we agree. Where supervision or control of a distinct aspect of the mining activity is farmed out to a firm different from the principal production-operator, refusal to apply the act's liability without fault provision would thwart the act's purposes.

We assume that Ames is correct in its argument that no-fault liability under § 110(a) would be unreasonably

expansive if it made *all* independent contractors—including those who were "operators" solely by virtue of "performing services" at a mine—liable for *all* safety violations, even violations completely outside the scope of a given independent contractor's work. But the argument doesn't get Ames anywhere, given the Secretary's resting on the proposition, adopted by the Commission, that Ames is liable simply for "an unsafe condition that occurred in connection with an activity for which it had supervisory responsibility." *Ames*, 2011 WL 3794313, at *4.

Ames finally argues that the "Independent Contractor Rule" stated in the Secretary's 1980 enforcement guidelines supports Ames's view that independent contractors can only be cited for safety violations "committed by them and their employees." See 45 Fed. Reg. 44,494, 44,494-97 (July 1, 1980). This line of argument is arguably waived, given that Ames raises it here for the first time. See 30 U.S.C. § 816(a)(1). In any event we don't find the language relied on by Ames relevant where, as here, an independent contractor also meets the definition of production-operator due to its supervision or control of part of the mine. See 30 C.F.R. § 45.2(d).

We therefore conclude that the Secretary's construction of the act is not precluded by its language or otherwise unreasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); see also *Secretary of Labor v. Cannelton Industries*, 867 F.2d 1432, 1435 (D.C. Cir. 1989) (*Chevron* deference afforded to Secretary's—as opposed to Commission's—interpretations of law). Her citation of Ames for a safety violation was therefore also permissible, as long as Ames did in fact supervise or control unloading operations so as to render it a production-operator of that part of the mine under § 3(d). We now turn to that issue.

7

\* \* \*

Ames argues that even if an independent contractor who supervises or controls a mine or portion of a mine can be liable without fault under § 110(a), the Commission's finding that Ames supervised the unloading of deliveries to the mine here was not supported by substantial evidence, see 30 U.S.C. § 816(a)(1), and that Ames's opportunity to present countervailing evidence on this point was deficient. We are not persuaded on either score.

Ames's first theory is that because of presumed error in the ALJ's finding that Orton was Ames's subcontractor, none of her opinion can support the Commission's holding resting on Ames's supervision of the unloading process.[1] But Ames does not seriously contest the key facts on which the Commission relied. In particular, the record establishes that: (1) Kay was escorted to the delivery drop-off location by a crew of three Ames employees, as required per an agreement with MSHA; (2) Kay was left with Ames employee Juan Florez and told to "wait right here" while the other two employees went to retrieve a forklift; (3) truck drivers like Kay typically loosen the straps on the truck but "the remainder of the process is left to the contractor who is in charge of the site"; and (4) Ames had the authority to stop work that created a danger to employees or property and to ensure unsafe conditions were corrected. See *Ames*, 32 FMSHRC at 349; *Ames*, 2011 WL 3794313, at \*5.

These uncontested propositions easily support the conclusion that Ames supervised the unloading process.

---

[1] The Commission reserved the question of whether Ames was also liable under § 110(a) due to "controlling" the physical area of the mine where the violation occurred. *Ames*, 2011 WL 3794313, at \*4 n.5.

Ames itself even stipulated that "Orton drivers are instructed to follow the policies and procedures of the recipient regarding safety and the unloading process. Orton drivers are instructed to follow the instructions of the supervisor of the unloading process." *Ames*, 2011 WL 3794313, at *5. Ames argues that it had "no authority to require Mr. Kay to abide by their policies or to discipline him if he [did] not." Petitioner's Br. 32. True enough, but Ames's conceded authority to stop danger-creating work, as well as the specific authority its employees actually exercised in this case (e.g., "wait right here"), clearly support the conclusion that it had assumed a supervisory role. Indeed, Ames said in its post-hearing brief before the ALJ that it "was responsible for the unloading process," and "asserted its control of the unloading process when [its employee] instructed Mr. Kay to 'Wait right here. We'll be right back with a forklift to unload you.'" Ames's Post-Hearing ALJ Br. 11, J.A. 152.

Ames argues that it should have been able to present evidence directed at disproving its supervision and control of unloading, on the grounds that the trial before the ALJ did not focus heavily on the Secretary's theory of strict liability under § 110(a). But "[n]o objection that has not been urged before the Commission shall be considered by the [reviewing circuit] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 30 U.S.C. § 816(a)(1). The circumstances do not seem extraordinary. Ames was on notice that supervision and control were at issue no later than when it filed its reply brief before the Commission, yet it never argued that it needed an opportunity to present evidence focused on those issues. See Ames's FMSHRC Reply Br. 8-10, J.A. 265-67; see also Ames's FMSHRC Br. 15-16, J.A. 225-26 (Ames arguing in opening brief to the Commission that it "was not in a supervisory position at the time Mr. Kay began unstrapping the load"). Moreover, a party applying to a circuit court for

leave to adduce additional evidence must "show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission," 30 U.S.C. § 816(a)(1); yet Ames has not even attempted to satisfy that standard here.

Finally, Ames argues that the citation must be vacated because subjecting it to the Secretary's "new policy of enforcement against third parties," violates the Due Process Clause of the Constitution, amend. v, cl. 4. See Petitioner's Br. 38; *Gates & Fox Co. v. Occupational Safety & Health Rev. Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986) ("[D]ue process . . . prevents . . . deference from validating the application of a regulation that fails to give fair warning of the conduct it prohibits or requires."); see also *General Electric Co. v. EPA*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995) (reaffirming fair notice requirement in civil administrative context). Given what we have said about the adequacy of notice to Ames of the Secretary's reliance on its supervision and control of the unloading process, plus the long-established liability of production-operators for violations without regard to fault, the claim is without substance.

\* \* \*

Accordingly, the petition for review is

*Denied*.