[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10757
_____

D.C. Docket No. 5:11-cv-04111-CLS


AGILITY DEFENSE & GOVERNMENT SERVICES,
AGILITY INTERNATIONAL, INC.,

Plaintiffs–Appellees,

versus

U.S. DEPARTMENT OF DEFENSE,
SECRETARY OF DEFENSE,
DEFENSE LOGISTICS AGENCY,
DIRECTOR OF THE DEFENSE LOGISTICS AGENCY,

Defendants–Appellants.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 31, 2013)

Before PRYOR and COX, Circuit Judges, and ROSENTHAL,[*] District Judge.

_____

[*] Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas,
sitting by designation.

PRYOR, Circuit Judge:

This appeal requires us to decide whether a federal agency may suspend two affiliates of an indicted government contractor for the duration of the legal proceedings against the indicted contractor under the Federal Acquisition Regulation. See 48 C.F.R. § 9.407-4(b) (2012). When an agency suspends a government contractor, the agency may also suspend an affiliate of the contractor based solely on its affiliate status. Id. § 9.407-1(c). Suspensions are temporary, and in "no event may a suspension extend beyond 18 months, unless legal proceedings have been initiated within that period." Id. § 9.407-4(b). We must determine whether the term "legal proceedings," in this regulation, refers to proceedings against the indicted government contractor or against the suspended affiliates of that contractor. The district court interpreted the term to refer to proceedings against the suspended affiliates, not the indicted contractor, but we disagree. Because the suspension of an affiliate is "include[d]" as part of the suspension of the indicted government contractor, id. § 9.407-1(c), we conclude that legal proceedings initiated against the indicted government contractor tolled the 18-month time limit for the suspension of the affiliates. We reverse the summary judgment in favor of the affiliates and render a judgment in favor of the defendants.

2

## I. BACKGROUND

The Federal Acquisition Regulation governs the acquisition of supplies and services by all federal agencies. See Establishing the Federal Acquisition Regulation, 48 Fed. Reg. 42,102-01-A (Sept. 19, 1983). For example, the regulation governs the contracts between the Department of Defense and the appellants, Agility Defense & Government Services and Agility International, Inc., which are government contractors. Under this regulation, a prospective government contractor must demonstrate its "responsibility" before an agency awards a government contract. 48 C.F.R. §§ 9.103, 9.104-1. When an existing contractor is deemed non-responsible, the regulation provides for the suspension and debarment of the non-responsible contractor and its affiliates. Id. §§ 9.406-2, 9.407-2.

An agency official may suspend a government contractor for various reasons, including the contractor's commission of fraud or a criminal offense, unfair trade practices, or "other offense[s] indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor." Id. § 9.407-2(a). The agency official may extend the suspension of the indicted government contractor "to include any affiliate[] of the contractor if they are (1) specifically named and (2) given written notice of the suspension and an opportunity to respond." Id. § 9.407-1(c); see also

3

id. § 9.403 (defining "affiliate"). A suspension of an indicted government contractor and its affiliates is a "temporary" remedy to "protect the Government's interest." Id. §§ 9.407-4(a), 9.407-1(b)(1). And "[i]n no event may a suspension extend beyond 18 months, unless legal proceedings have been initiated within that period." Id. § 9.407-4(b).

Based on this regulation, Agility Defense and Agility International were suspended in November 2009. A grand jury indicted the parent company of Agility Defense and Agility International, Public Warehousing Company, K.S.C., for a multibillion-dollar fraud perpetrated against the United States in connection with its government contract to supply food to American military personnel in the Middle East. The Defense Logistics Agency, a combat support agency of the Department of Defense, suspended Public Warehousing on November 16, 2009, on the basis of the indictment. See id. § 9.407-1(c). On the same day, the agency extended the suspension to Agility Defense because it was an affiliate of Public Warehousing. And on November 23, 2009, the agency suspended Agility International on the same basis.

The affiliates submitted written responses in opposition to their suspensions. They argued that they were not implicated in the indictment of Public Warehousing and that they had sufficient compliance procedures to guard against fraud. The agency rejected their requests to terminate the suspensions. Both

4

affiliates then sought a temporary restraining order to enjoin the agency from implementing the suspensions, which the District Court for the District of Columbia denied.

The affiliates appealed to the agency to reconsider their suspensions, but the agency refused their requests. Agility Defense presented new evidence of improved compliance procedures, but the agency refused to terminate its suspension. The agency likewise refused to reconsider the suspension of Agility International after it proposed a management buyout, in which a new holding company would buy a 60-percent stake in Agility International, and Public Warehousing would indirectly retain only 40-percent ownership. The agency stated that the buyout would not affect its suspension, so Agility International did not complete the buyout.

After the agency lifted the suspensions of other affiliates of Public Warehousing based on similar management buyout plans, Agility Defense and Agility International filed this action for injunctive and declaratory relief. Both parties agreed that there was no genuine dispute as to any material fact and moved for summary judgment. The district court granted summary judgment in favor of the affiliates and denied summary judgment in favor of the agency. The district court ruled that the agency did not have the power to suspend the affiliates indefinitely even if it initially had the power to suspend the affiliates based solely

5

on their affiliate status.  Because neither the United States nor its agencies initiated legal proceedings against the affiliates within 18 months of their suspension notices, the district court declared the suspensions contrary to law and ordered the agency to terminate the suspensions.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo.  See Citizens for Smart Growth v. Sec'y of the Dep't of Transp., 669 F.3d 1203, 1210 (11th Cir. 2012). We apply the same legal standards as the district court when we review an agency action, and we set aside the agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  Id.; see 5 U.S.C. § 706(2)(A).

## III. DISCUSSION

We divide our discussion in two parts.  First, we hold that the regulation permits the suspension of an affiliate of an indicted government contractor to exceed 18 months when legal proceedings have been initiated against the indicted government contractor.  Second, we hold that the regulation does not unconstitutionally deprive the affiliates of their right of due process under the Fifth Amendment.

*A. The Suspension of an Affiliate of an Indicted Government Contractor May Exceed 18 Months When Legal Proceedings Have Been Initiated Against the Indicted Government Contractor.*

The central issue in this appeal is whether the United States or its agencies must initiate legal proceedings against an affiliate of an indicted government contractor to toll the 18-month time limit on the suspension of the affiliate even though the affiliate was suspended solely on account of its affiliate status. The regulation states, "In no event may a suspension extend beyond 18 months, unless legal proceedings have been initiated within that period." 48 C.F.R. § 9.407-4(b). The agency argues that we must interpret "legal proceedings" as legal proceedings against the indicted government contractor. The affiliates argue that we must interpret "legal proceedings" as legal proceedings against the suspended affiliate of the indicted government contractor. We agree with the agency.

We interpret the term "legal proceedings" in context with two related provisions in the regulation. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132–33, 120 S. Ct. 1291, 1301 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."); Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1204–05 (11th Cir. 2001); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167–69 (2012) ("The text must be construed as a whole."). First, the regulation clearly states that an agency can

7

suspend an affiliate based solely on its status as an affiliate of an indicted government contractor. 48 C.F.R. § 9.407-1(c). Second, the parallel provision governing debarment likewise permits an affiliate to be debarred solely based on its status as an affiliate. Id. § 9.406-1(b). Together, these provisions make clear that the suspension and debarment of an affiliate derive solely from its status as an affiliate; no showing of wrongdoing by the affiliate is required for suspension or debarment.

Because the regulation clearly establishes that the agency can suspend an affiliate without any showing of wrongdoing by the affiliate, we read "legal proceedings" as legal proceedings against the indicted government contractor. The agency must satisfy only three requirements to suspend an affiliate: (1) it must establish that the affiliate has the power to control the indicted government contractor or be controlled by the indicted government contractor; (2) it must specifically name the affiliate; and (3) it must provide notice of the suspension and notice of an opportunity for the affiliate to respond. Id. §§ 9.403, 9.407-1(c). Together, the suspensions of an indicted government contractor and its affiliate constitute one "suspension decision" because an affiliate is "include[d]" in the suspension of the indicted government contractor. Id. § 9.407-1(c). No cause precipitates the suspension of an affiliate except for its association with the indicted government contractor. The United States and its agencies have little

8

reason to initiate legal proceedings against an affiliate suspended solely on account of its affiliate status.

The affiliates argue that an affiliate must be treated as an independent entity when an agency evaluates the duration of its suspension because an agency treats an affiliate as an independent entity when evaluating whether the affiliate is eligible to be a government contractor. See id. § 9.104-3(c). But the agency action before us is not a finding of present responsibility for the purpose of awarding a government contract. We are instead reviewing the suspensions of two affiliates, which all parties agree derive solely from their association with Public Warehousing following its indictment for a multibillion-dollar fraud committed against the United States. The whole text of the regulation provides that an affiliate can be suspended based solely on its affiliate status so long as the agency establishes that it is an affiliate, gives notice of the suspension, and provides an opportunity to respond to the suspension. The present responsibility of an affiliate is irrelevant.

We also read the disputed text in context with the parallel provision of the regulation governing debarment. A suspension is the precursor to the more permanent remedy of debarment. See id. § 9.406-1. If the prosecution of a government contractor results in a conviction, for example, then that conviction can serve as the basis to debar the contractor. The agency may also debar an

affiliate of that contractor based solely on its affiliate status. Id. § 9.406-1(b). Like suspensions, an agency can debar an affiliate even if the affiliate has not engaged in wrongdoing. Id. § 9.406-1(b); see also Leitman v. McAusland, 934 F.2d 46, 48, 48 n.2 (4th Cir. 1991); Robinson v. Cheney, 876 F.2d 152, 154 (D.C. Cir. 1989); Ciaola v. Carroll, 851 F.2d 395, 400 (D.C. Cir. 1988). Only one court has stated that the debarred affiliate "must have been involved in or affected by the contractor's wrongdoing to be named in the debarment," OSG Prod. Tankers LLC v. United States, 82 Fed. Cl. 570, 578 (2008), but this statement by the Court of Federal Claims was dicta. OSG Product Tankers involved a dispute about whether the company was eligible to be a government contractor, and the opinion included discussion of a previous debarment. This dicta about a requirement of wrongdoing by the affiliate in OSG Product Tankers is unpersuasive in the light of the whole text of the regulation and the decisions of our sister circuits, which allow the debarment of an affiliate based solely on its status as an affiliate.

Our reading of the provisions governing debarment makes sense of the term "legal proceedings" in the provision governing suspension. If the legal proceedings against Public Warehousing were to result in a conviction and debarment, the agency could debar both Agility Defense and Agility International based solely on that conviction and debarment of Public Warehousing. It would be nonsensical to require the agency either to terminate the suspensions of the

10

affiliates or to initiate separate legal proceedings against the affiliates, only to debar them if the legal proceedings against Public Warehousing end in a conviction.

### B. A Suspension of an Affiliate that Exceeds 18 Months Is Not a Violation of Due Process Because the Regulation Affords an Affiliate Constitutionally Sufficient Process To Contest Its Suspension.

To establish a violation of the Due Process Clause of the Fifth Amendment, the affiliates must prove that they have a constitutionally protected interest in liberty or property, that the government deprived them of that interest, and that the procedures accompanying that deprivation are constitutionally inadequate. See Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993). A contractor possesses no property interest in doing business with the United States. Id. But a contractor can establish that an agency deprived it of its liberty interest if it proves that an agency has made a stigmatizing allegation, the allegation has been disseminated or publicized, and the allegation has resulted in the loss of a tangible interest. Id. at 1367.

The district court erred when it stated that the suspensions of the affiliates, which exceeded 18 months, "raise[d] due process concerns" because the regulation guarantees constitutionally adequate process. It is unlikely that the regulation infringes on the liberty interests of the affiliates given that their suspensions were predicated solely on their status as affiliates of Public Warehousing and the agency

11

did not make any allegations of wrongdoing against them.  But, even assuming that the suspension of the affiliates deprived them of their liberty, the regulation does not violate the Due Process Clause because it contains constitutionally adequate procedures.  An agency must immediately notify a suspended affiliate of its suspension by certified mail.  48 C.F.R. § 9.407-3(c).  That notification includes the basis of the suspension and advises the affiliate of its opportunity to respond in writing.  Id.  These procedures—notification and an opportunity to respond—are constitutionally adequate procedures for multiyear suspensions.  See Home Bros., Inc. v. Laird, 463 F.2d 1268, 1271 (D.C. Cir. 1972) ("[A]n action that 'suspends' a contractor and contemplates that he may dangle in suspension for a period of one year or more . . . . requires that the bidder be given specific notice as to at least some charges alleged against him, and be given, in the usual case, an opportunity to rebut those charges.").

The affiliates contend that the continuation of their suspensions without additional process is "constitutionally dubious," but the affiliates fail to recognize that the agency afforded them additional process when it twice considered their request to terminate their suspensions.  In both instances, the agency ruled that the affiliates could not establish that they were no longer "affiliates" of Public Warehousing.  See 48 C.F.R. § 9.403.  So long as they are affiliates of Public Warehousing, they can be suspended.  See id. § 9.407-1(c).  The affiliates have

12

conflated constitutionally adequate process with getting their way.  That the

agency refused to lift their suspensions is not the equivalent of constitutionally

inadequate process.

## IV. CONCLUSION

We **REVERSE** the summary judgment in favor of the affiliates, Agility

Defense and Agility International, and **RENDER** a judgment in favor of the

defendants.