# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 9, 2014     Decided June 24, 2014

No. 13-1136

JOSEPH F. SHEBLE, III,
PETITIONER

v.

MICHAEL P. HUERTA, ET AL.,
RESPONDENTS

On Petition for Review of an Order
of the Federal Aviation Administration

*Joseph Michael Lamonaca* argued the cause and filed the brief for petitioner.

*Bradley J. Preamble*, Trial Attorney, Federal Aviation Administration, argued the cause for respondents. With him on the brief was *Richard H. Saltsman*, Assistant Chief Counsel for Litigation and General Law.

Before: GARLAND, *Chief Judge*, SRINIVASAN, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by Circuit Judge SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Joseph F. Sheble, III, served as a Designated Pilot Examiner on behalf of the Federal Aviation Administration. That role called for him to conduct flight examinations and issue FAA certificates to pilots. The FAA revoked Sheble's appointment based on deficiencies in his performance. Sheble challenges his revocation, arguing that the FAA failed to follow its own procedures and that one of his FAA evaluators labored under a conflict of interest. We reject those arguments and deny his petition for review.

I.

The FAA Administrator issues airman certificates, akin to a driver's license for pilots, to qualified individuals. *See* 49 U.S.C. § 44703(a). The Administrator delegates to Designated Pilot Examiners the authority to perform "the examination, testing, and inspection necessary to issue a certificate," as well as the authority to "issu[e] the certificate." *See id.* § 44702(d)(1). Designated Pilot Examiners are private persons rather than FAA employees, and are ordinarily appointed by the manager of a local Flight Standards District Office. *See* 14 C.F.R. § 183.11(b). The appointment carries an expiration date, *id.* § 183.13(b), but an appointment may be terminated in advance of that date for "any reason the Administrator considers appropriate," 49 U.S.C. § 44702(d)(2); 14 C.F.R § 183.15(b)(6).

The FAA, in conjunction with the local Flight Standards District Office, evaluates Designated Pilot Examiners according to procedures set forth in FAA Order 8900.1, change 95, Flight Standards Information Management System (2010) (FAA Order 8900.1). Evaluations occur at least annually. *See* FAA Order 8900.1, vol. 13, ch. 6, § 1, at 2. One type of evaluation is known as a Special Emphasis Evaluation Designee (SEED) evaluation. *Id.* ch. 5, § 5. A SEED evaluation is an in-depth assessment conducted by a team of FAA inspectors. It usually takes place

over several days and involves observation of the Designated Pilot Examiner's administration of a practical test to applicants. *Id.* at 2-4. After a SEED evaluation, the evaluation team makes a final report and transmits the findings to the local Flight Standards District Office manager. *Id.* at 7-8. Based on those findings, the local manager possesses discretion to implement various corrective options, including remedial training or termination of the examiner's appointment. *Id.* § 2, at 8.

FAA Order 8900.1 contains instructions on how to terminate a Designated Pilot Examiner's appointment for unsatisfactory performance. *Id.* § 3. The FAA must inform the examiner in writing of the termination decision, "with the reasons cited as specifically as possible." *Id.* at 5. The Order includes a template for a termination letter. *Id.* at 3 fig.13-4. The individual may appeal his or her termination to an FAA appeal panel. *Id.* at 5-6.

In 2011, the FAA conducted a risk assessment for all 1013 Designated Pilot Examiners nationwide. The assessment identified Sheble as one of the six highest-risk examiners in the country based on the large number of tests he conducted and the comparatively high rate at which he gave passing marks. The FAA therefore decided to conduct a SEED evaluation of Sheble. The evaluation, administered by a team of seven FAA inspectors, took place in September 2011. The evaluation team identified a number of deficiencies in Sheble's performance as an examiner. The deficiencies included using an outdated copy of the FAA's test standards, giving the applicant the correct answers, failing to cover mandatory subjects in the oral examination, and failing to test mandatory maneuvers during the flight examination. The SEED evaluators recommended that Sheble undergo remedial training.

After he completed remedial training, Sheble's local Flight Standards District Office conducted follow-up evaluations of

him. Two evaluations noted concerns with his performance. On November 26, 2012, the FAA conducted a second SEED evaluation. An evaluation team of three FAA inspectors observed Sheble conduct a pilot test. The team's SEED report explained that Sheble asked questions that were not part of the test, asked questions at only a rote level, accepted incorrect answers, omitted certain required procedures, and then failed the applicant after asking the applicant a question on material not contained in the test standards. The report recommended termination of Sheble's appointment as a Designated Pilot Examiner.

Michelle Brown, the leader of the SEED-evaluation team, orally informed Sheble of his unsatisfactory performance and debriefed him on the team's negative findings. Brown advised Sheble to cease conducting pilot tests until he heard from his local Flight Standards District Office. On November 28, 2012, FAA inspector Anthony Roldan (Sheble's contact at the local District Office) talked to Sheble on the phone about the SEED evaluation's negative findings and confirmed Sheble's suspension. Roldan followed up with an email, and Sheble responded with a three-page document disputing the SEED findings that had been related to him by Brown and Roldan.

In December 2012, Sheble's local manager accepted the SEED report's recommendation, and, in writing, terminated Sheble's appointment for cause. The letter informed Sheble that he had been terminated "for not performing your duties under your designation in accordance with current FAA guidance and policy." The letter cited an FAA regulation and highlighted five negative findings from the November SEED report.

In January 2013, Sheble timely filed an administrative appeal. He argued, among other things, that his termination letter failed to cite the grounds for his termination with adequate specificity, in violation of the FAA's internal procedures. In

addition, Sheble contended that Brown operated under a conflict of interest because she was engaged to marry another FAA inspector who allegedly had criticized Sheble's performance in the past. On February 15, 2013, the FAA's appeals panel affirmed Sheble's termination.

II.

Sheble contends that the FAA contravened its own procedural requirements by terminating his appointment as a Designated Pilot Examiner without setting forth the reasons with sufficient specificity. While we have held in a closely related context that we lack jurisdiction to review the substantive merits of an FAA termination decision, *see Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003), Sheble raises a procedural rather than a substantive challenge. We possess jurisdiction to address his procedural claim. *See Lopez v. FAA*, 318 F.3d 242, 246-48 (D.C. Cir. 2003). To prevail, Sheble must show that the FAA "fell substantially short" of the applicable procedural requirements, "resulting in prejudice to him." *Id.* at 248 (internal quotation marks omitted); *see Steenholdt*, 314 F.3d at 639-40. Sheble fails to make the requisite showing.

The FAA's internal procedures prescribe that a decision to terminate a Designated Pilot Examiner's appointment must be communicated in writing, "with the reasons cited as specifically as possible." FAA Order 8900.1, vol. 13, ch. 5, § 3, at 5. The FAA does not dispute its obligation to abide by those procedural requirements. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Lopez*, 318 F.3d at 247-48. Sheble argues that the FAA failed to do so because his termination letter did not cite the reasons "as specifically as possible." The letter stated, in pertinent part:

> Your designation is being terminated for not performing your duties under your designation in accordance with current FAA guidance and policy. (FAA Order 8900.2, Chapter 7 and the current

Practical Test Standards for the test being administered)[.] During the November 26, 2012, [SEED] inspection it was determined that:

1.  Required elements of the Practical Test Standards (PTS) were omitted during testing, including special emphasis items.

2.  Testing was not conducted beyond the rote level.

3.  Numerous PTS tasks used in evaluating the applicant were not applicable to the practical test being administered.

4.  Pretest briefing items were omitted.

5.  Incorrect answers were accepted without objections or further testing.

That letter, contrary to Sheble's argument, substantially complied with the FAA's internal procedures. The contours of the FAA's procedural requirements gain clarity not just from the text of FAA Order 8900.1, but also from an appended "Sample Letter of Termination." The sample letter functions as a template and illustrates for local managers how to implement the procedural requirements. Of particular salience, the template letter exhibits the FAA's understanding of the requirement to identify the termination reasons "as specifically as possible." That formulation, without further explication, might well leave questions in the minds of local managers concerning the level of detail with which they are expected to set forth the reasons for a termination decision. The template letter states, in pertinent part:

Your designation is being terminated [for not performing your duties under your designation OR

because you no longer meet the eligibility requirements for the designation.] [Cite the reference to the regulations/policy that was violated/noncompliance.]

FAA Order 8900.1, vol. 13, ch. 5, § 3, at 3 fig.13-4 (brackets in original).

The termination letter sent to Sheble was in large measure a verbatim copy of the template letter contained in the FAA's procedural rules. Sheble's termination letter included at least as much information as is called for by the template: Sheble's letter, in line with the template, cited the applicable regulation and enumerated his violations of the regulation. Sheble in fact makes no argument that his letter departed from the template letter, and he gives us no reason to view the template as constituting anything other than the FAA's interpretation and implementation of FAA Order 8900.1. Because Sheble's termination letter adhered to the FAA-prescribed template, it substantially complied with the FAA's internal procedures.

Of course, none of this is to suggest that the FAA could not voluntarily elect to communicate the reasons for its termination decisions with greater specificity than its rules and template letter contemplate. The FAA has made us aware of no reason, for instance, why it could not simply give an affected individual a copy of a SEED report itself in the circumstances of this case instead of distilling the evaluation into a list of reasons of the kind given to Sheble. But for present purposes, Sheble's termination letter substantially complied with FAA Order 8900.1 as illustrated by the template.

Sheble, moreover, fails to demonstrate any prejudice caused by the asserted deficiencies in his termination letter. *See Lopez*, 318 F.3d at 248. On two separate occasions, FAA inspectors debriefed Sheble concerning the negative findings contained in the November SEED evaluation. Brown, the leader of the

evaluation team, spoke with Sheble about his unsatisfactory performance as set forth in the evaluation. Brown discussed examples of Sheble's deficient performance, including Sheble's omission of portions of the test, his posing of questions on subjects outside the testing materials, and his failure to ask questions beyond a basic level. Sheble also spoke with Roldan, another FAA inspector, about the negative findings from the SEED evaluation. Sheble does not dispute that he received specific information from both Brown and Roldan about the performance deficiencies identified in the evaluation. Nor does Sheble allege any shortcomings in the reports he received from them, or any manner in which the conversations failed to give him adequate information with which to meaningfully contest his termination. Sheble thus has failed to demonstrate prejudice from the alleged deficiencies in the specificity of his termination letter.

## III.

Sheble contends that Brown operated under a conflict of interest that tainted Sheble's evaluation. *See* U.S. Dep't of Transp. Order 3750.7A, § 12(a)(8) (Oct. 24, 2011) ("Employees shall act impartially and not give preferential treatment to any private organization or individual."). We disagree. The basis of Sheble's claim is that Brown was engaged to marry another FAA inspector with whom Sheble had some "negative history." Sheble alleges that Brown's fiancé had, at some point in the 2000s, told Sheble that he was running a "ticket mill" and that Brown later used the same phrase during Sheble's SEED evaluation. Beyond that assertion, Sheble provides no further information and identifies no evidence in the record.

The FAA responds that a conflict-of-interest claim must relate to a *financial* conflict of interest. We need not resolve that issue in this case. Even assuming that a conflict-of-interest claim can rest on a non-financial conflict, Sheble fails to

establish any actionable conflict here.  The mere fact that one of Sheble's evaluators was engaged to marry another FAA inspector who had previously formed an opinion about Sheble does not demonstrate any improper conflict of interest.  Sheble does not explain why there would be any impropriety in the sharing of views about his performance among FAA inspectors, regardless of their relationship.  The use of the same phrase several years apart by Brown and her fiancé, without additional information or evidence, likewise fails to show that Brown's assessment may have been inappropriately colored by any conflict of interest.  Additionally, there were two other inspectors on the SEED-evaluation team with Brown, both of whom concluded that Sheble's appointment should be terminated.  Sheble does not dispute that those inspectors exercised independent discretion in recommending his termination.  Sheble's local manager also made an independent decision to accept the SEED report's recommendations and terminate Sheble's appointment.  Sheble, in short, has failed to show that any improper conflict of interest affected the decision to terminate his appointment as a Designated Pilot Examiner.

* * * * *

Accordingly, we deny the petition for review.

*So ordered.*