[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14249

_____

Agency No. FAA

WALTER BRADSHAW,

Petitioner,

versus

FEDERAL AVIATION ADMINISTRATION,

Respondent.

_____

Petition for Review of a Decision of the
Federal Aviation Administration

_____

(August 12, 2021)

Before BRANCH, LUCK, and ED CARNES, Circuit Judges.

BRANCH, Circuit Judge:

Walter Bradshaw was a designated pilot examiner for the Federal Aviation

Administration ("FAA").  Designated pilot examiners test applicants for pilot

licenses and, if the applicant passes the test, the designee has the authority to issue the applicant an airman certificate. In June of 2018, the FAA discovered that Bradshaw had certified a pilot applicant without conducting a complete flight test. Thereafter, the FAA terminated Bradshaw's designation. A three-member FAA appeal panel affirmed the termination decision and Bradshaw appealed to this Court.

Bradshaw now argues that the FAA followed the incorrect termination procedure when it terminated his designation and, even if the procedure that it followed was the correct one, the FAA violated its requirements. Because Bradshaw failed to argue to the FAA appeal panel that the incorrect termination procedure was used, we do not review that claim. Further, after examining the procedure that the FAA employed, we conclude that the FAA did not fall short of its requirements.

Bradshaw also raises two constitutional claims. He first asserts that the FAA violated his constitutional right to due process guaranteed by the Fifth Amendment. In rejecting this claim, we join other circuits that have considered the issue and hold that FAA designated pilot examiners do not have a property or liberty interest in their designation. Bradshaw's other constitutional claim—that the FAA violated his right to equal protection because other categories of FAA designees are afforded a hearing before their designation can be terminated—is

2

also without merit.  In sum, because none of Bradshaw's claims pass muster, we deny his petition for review.

I.

A. Legal Background

Why and how the FAA terminated Bradshaw's designation makes little sense in a vacuum.  We therefore begin with some context.  The Federal Aviation Act authorizes the FAA Administrator to issue airman certificates to qualified individuals.  49 U.S.C. § 44703(a).  Airman certificates are akin to driver's licenses for pilots.  *See id.*  Of course, the FAA Administrator need not issue such certificates himself.  Instead, he "may delegate to a qualified private person, or to an employee under supervision of that person, a matter related to [] the examination, testing, and inspection necessary to issue a[n] [airman] certificate under this chapter . . . and [] issuing the [airman] certificate."  *Id.* § 44702(d)(1).  The private persons tasked with that authority are called designated pilot examiners ("DPEs").  Generally, the Flight Standards Inspector ("FSDO inspector") for a local Flight Standards District Office ("FSDO") appoints DPEs.  14 C.F.R. § 183.11(b).  A DPE's initial appointment expires after one year, but the FAA may subsequently renew it for a term of three years or less.  FAA Order 8900.2B, ch. 3, para. 4, 5 (Sept. 23, 2016).  The FAA Administrator may terminate—meaning either rescind or not renew—a DPE's designation "at any time for any reason the

3

Administrator considers appropriate." 49 U.S.C. § 44702(d)(2); FAA Order

8900.1, vol. 13, ch. 5 § 3, 13-465; *see also* 14 C.F.R. § 183.15(b)(6).

DPEs must meet the standards set forth in Chapter 7 of FAA Order 8900.2B.

To ensure they meet those standards, the FSDO inspectors may, among other

things, interview recently certified pilots to confirm that the testing DPE followed

the testing procedures. FAA Order 8900.1, vol. 13, ch. 6 § 1, 13-519, 522–23

(Sept. 25, 2017).[1] If the FSDO inspector determines that the DPE's performance is

substandard, he may take a number of remedial actions, including ordering

additional training or initiating the termination of the DPE's designation. *Id.* at

13-524, para. B.

The FAA may terminate the DPE's designation with or without cause. FAA

Order 8900.1, vol. 13, ch. 5, § 3, 13-465, para. A. A not-for-cause termination

"can be for any reason not specific to a designee's performance," such as a lack of

need for the DPE or the DPE's voluntary surrender of his appointment. *Id.* On the

other hand, a for-cause termination is one "based on a [DPE's] performance." *Id.*

Reasons for the latter form of termination include "[u]nsatisfactory performance in

any phase of [DPE] duties or responsibilities" and "[a]ny actions by the [DPE] that

---

[1] Since this appeal was filed, the FAA transposed the version of FAA Order 8900.1 in force at the time of Bradshaw's termination to FAA Order 8900.95A. For consistency with the FAA appeal panel, this opinion references the former version of FAA Order 8900.1. The current version of FAA Order 8900.95A is available at https://www.faa.gov/documentLibrary/media/Order/Order_8000.95A.pdf.

may reflect poorly on the FAA." *Id.* para. B. Because the FAA terminated Bradshaw's designation for cause, we focus on that form of termination.

FAA Order 8900.1 sets forth the procedures for termination of a DPE's designation. FAA Order 8900.1, vol 13, ch. 5, § 3, 13-467. The FAA office manager of the managing FAA office makes the decision to terminate DPE designations. *Id.* para. A. Upon doing so, the FAA office manager must provide the termination decision to the DPE in writing, citing the reasons for the termination "as specifically as possible." *Id.* para. B. When the DPE receives that notification, he must immediately "cease the exercise of his or her designee privileges." *Id.* FAA Order 8900.1 provides a sample letter for use in providing the written notice of "for cause" termination. *Id.* at 13-465, fig. 13-4. The "for cause" template letter, in relevant part, states:

> This letter is to inform you that your Federal Aviation Administration (FAA) designation as a [type of designee, e.g., Designated Pilot Examiner (DPE) or Technical Personnel Examiner (TPE)] is terminated pursuant to [Title 14 of the Code of Federal Regulations (14 CFR) part 183, § 183.15(b)(4) or § 183.15(b)(6)/Title 49 of the United States Code (49 U.S.C.) § 44702(d)(2).] [You must immediately cease exercising the privileges of your designation] [*or*] [Pursuant to our (telephone conference/meeting) on (date), you were to cease exercising the privileges of your designation on (date).]
>
> Your designation is being terminated [for not performing your duties under your designation OR because you no longer meet the eligibility requirements for the designation.] [Cite the reference to the regulations/policy that was violated/noncompliance.]

You may submit a request for appeal in writing to this office no longer than 14 calendar-days from the date of receipt of this letter. At that time, you should include any evidence or statement concerning this matter with your written request for appeal. You will be notified of the outcome of the appeal within 60 calendar-days after our receipt of your written request for appeal.

*Id.* (alterations in original).

If the DPE who was terminated for cause wishes to appeal the termination, he may submit an appeal to the regional division office, which will convene a panel composed of three members "who were not involved in the original . . . termination decision." *Id.* at 13-467, para. F(2). The panel's decision is final. *Id.* para. F(3). A former designee terminated for cause cannot reapply for a designation. FAA Order 8900.1, vol. 13, ch. 5, § 1, 13-408 (Aug. 25, 2017).[2]

B. Factual Background

1. The FAA Terminates Bradshaw

With that legal background in mind, we turn to Walter Bradshaw. The FAA's termination of Bradshaw's designation was based on his administration of a flight test on June 12, 2018.[3] On June 13, the Jackson FSDO received a complaint

---

[2] Available at: https://www.faa.gov/documentLibrary/media/Order/Order_8000.95A.pdf (now FAA Order 8000.95A vol. 1, ch. 2, para 4(a) (December 7, 2020)).

[3] While his termination stemmed from the June 12, 2018 test, Bradshaw had a history of poor performance. In August 2016, a FAA investigator suspended Bradshaw's designation and ordered him to participate in remedial training after finding that Bradshaw did not follow the FAA procedures while conducting a flight test. The ensuing remedial plan noted that Bradshaw had demonstrated numerous performance deficiencies in previous years. For example, Bradshaw

about that flight test and assigned FSDO inspector Mallory ("Mal") Woodcock to investigate. Upon reviewing the flight tapes and radar, and interviewing the pilot applicant, Woodcock's initial conclusion was that Bradshaw did not conduct a full practical test, but nevertheless certified the pilot applicant.

Meanwhile, Bradshaw's application for renewal of his pilot examiner designation (set to expire at the end of June) was pending. Woodcock recognized that the timing of the renewal presented a possible procedural issue: should the FAA renew Bradshaw's designation even though Woodcock was investigating him? Accordingly, on June 21, 2018, Woodcock e-mailed the higher ups at the FAA regional office, including Alvaro Gil and Jay Kitchens. Woodcock's e-mail read:

> Sirs:
>
> We seek your concurrence with the following situation. One of our DPE's was recently reported to our office by [the Air Traffic Organization (ATO)] concerning the operation of an aircraft during a practical test. For expediency, I won't go into details now. Bottom line, upon review of the ATC data (tapes/radar), it appears that the DPE did not conduct a full practical test. However, [the Integrated Airman Certification and Rating Application (IACRA)] indicates that he certified the airman. There are other issues concerning the conduct of the flight that are still being investigated.

gave passing grades to over 90% of pilot applicants, which was one of the highest passage rates in the district. And according to the "database records," Bradshaw "consistently" had "a high rate of returns of applications due to errors." Other issues included that Bradshaw acted "without regard to safety," did not "use[] scenario type questioning," had difficulty using the testing software, and had to go through several remedial trainings. Moreover, his use of "ethnically-charged comments," which were "overheard by a stakeholder," spurred a congressional inquiry.

> The DPE has applied for renewal (due to expire at the end of June). We were in the final stages of processing his renewal. However, given the status of our investigation, we do not want to complete his renewal process, until the investigation is complete. Question: Can we "suspend" the renewal process based on the ongoing investigation?
>
> Thank you for your timely response on this matter.

Gil responded with the following message: "Just to recap our earlier phone conversation. Please make sure to communicate with the DPE and inform him that all designee activity must stop. In the interim you can hold off on the renewal, but action must be taken depending on what the outcome of the investigation is."

Later that day, Woodcock called Bradshaw and told him to cease all testing activity pending the investigation. Woodcock informed him that the FAA had received a complaint regarding the June 12 flight test and that he would send Bradshaw a copy of the radar and audio data from that flight test for his review. On June 26, Woodcock called Bradshaw to discuss the audio data. During that call and another call later that day, Bradshaw disputed Woodcock's review of what took place during the flight test.

On June 29, 2018, the FAA terminated Bradshaw's designation as a pilot examiner. The Jackson FSDO notified Bradshaw of the decision in a letter ("Termination Letter"). The Termination Letter stated, in relevant part:

> Your designation is being terminated for not performing your duties under your designation. Specifically, on June 12, 2018, you administered an instrument rating practical test during which you

8

failed to uphold the Instrument Rating – Airplane, Airman
Certification Standards (FAA-S-ACS-8B) as required by 14 CFR
§ 61.43(a) and FAA Order 8900.2B, Chapter 5, Paragraph 1b and
Chapter 7, Section 2, Paragraph 6.  Furthermore, during the
aforementioned practical test, and while operating under Instrumental
Flight Rules (IFR), you permitted the applicant to deviate from an Air
Traffic Control (ATC) clearance contrary to FAA Order 8900.2B,
Chapter 7, Section 2, Paragraph 6; and 14 CFR § 91.123(a).
Additionally, throughout the flight, you were heard conducting
numerous radio transmissions that draws into question whether or not
you adequately tested the applicant's single pilot resource
management (SRM) skills.

Bradshaw's termination letter further informed him that he had the right to appeal

the termination to a three-member panel.  The letter instructed him that his written

request for appeal should include "any evidence or statement concerning this

matter."  The Jackson FSDO office manager, Charles O. Peters, signed the

termination letter.

   2. Bradshaw Appeals the Termination

Bradshaw obtained counsel and, on July 5, 2018, filed a written appeal of

the termination decision.  In his written appeal, Bradshaw argued that he had not

violated any FAA regulations or procedures.  He launched several accusations

against the Jackson FSDO, including that the local office had "been unwittingly

dragged into a retaliatory vindictive action against" Bradshaw, that "there [was] a

witch hunt going on," and that an employee "breached . . . a duty of confidentiality

regarding" Bradshaw.  Bradshaw further claimed that Woodcock inappropriately

allowed a trainee to listen to his interview with Bradshaw and that Woodcock did

not give Bradshaw the opportunity to have his lawyer present during the interview. And Bradshaw accused Woodcock of bias based on several tweets Woodcock had posted.

On August 9, 2018, a three-member panel met telephonically to discuss Bradshaw's termination and appeal. According to the internal e-mails, Kitchens, who was copied on Woodcock's June 21 e-mail, and Gil, who responded to that e-mail, assembled the panel. Gil also served as a panel member. On August 13, 2018, the panel sent Bradshaw a memorandum informing him that it had upheld the termination decision. Bradshaw filed a timely petition for review of that final agency decision. *See* 49 U.S.C. § 46110(a).

## II.

We have jurisdiction to review a final FAA order under 49 U.S.C. § 46110 and can set aside that order if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But because Congress authorized the FAA administrator to "rescind a delegation . . . at any time for any reason," 49 U.S.C. § 44702(d)(2), the FAA's order to terminate a designation "is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Thus, as Bradshaw acknowledges, we lack jurisdiction to review the substance of the FAA's decision to terminate because, as other circuit courts have recognized, the FAA's discretionary termination decision is unreviewable. *See Burdue v.*

10

*F.A.A.*, 774 F.3d 1076, 1082 (6th Cir. 2014) ("By its very terms, § 44702(d)(2) places 'no constraints on the Administrator's discretion.' Review would not only be improper, but it would also be futile." (quoting *Steenholdt v. F.A.A.*, 314 F.3d 633, 639 (D.C. Cir. 2003))); *Steenholdt*, 314 F.3d at 638 ("With regard to the substance of the FAA's nonrenewal decision, there is no law to apply."); *Greenwood v. F.A.A.*, 28 F.3d 971, 974–75 (9th Cir. 1994) ("[W]e lack jurisdiction to review the merits of an FAA decision to suspend or not to renew [a designation].").

Although we lack jurisdiction to review the substance of the termination decision, we may still consider whether the FAA met its procedural requirements, *Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014), or violated the Constitution, *Burdue*, 774 F.3d at 1082.

## III.

On appeal, Bradshaw first argues that the FAA followed the wrong termination procedure. In the alternative, Bradshaw argues that the FAA did not abide by the requirements of the termination procedure it employed. Finally, Bradshaw argues that the FAA violated his constitutional rights to due process and equal protection under the law. We take each argument in turn.

A. The Applicable Procedure

Bradshaw claims that in terminating his designation the FAA should have applied the procedures set forth in 14 C.F.R. § 13.20[4] rather than those set forth in FAA Order 8900.1.  Because Bradshaw failed to raise this argument before the FAA appeal panel, we cannot consider it.  *See* 49 U.S.C. § 46110(d) ("In reviewing an order under this section, the court may consider an objection to an order of the . . . Administrator of the [FAA] only if the objection was made in the proceeding conducted by the [Administrator] or if there was a reasonable ground for not making the objection in the proceeding."); *Zukas v. Hinson*, 124 F.3d 1407, 1410 n.6 (11th Cir. 1997) (holding that "we need not address" the petitioner's objections that the pilot certificate revocation order was untimely and that the FAA administrator's claim was an attempt to circumvent provisions of the code of federal regulations because he failed to raise the issue during the administrative proceedings); *see also Vidiksis v. E.P.A.*, 612 F.3d 1150, 1158 (11th Cir. 2010) ("Under ordinary principles of administrative law, a reviewing court will not

---

[4] 14 C.F.R. § 13.20 governs "orders of compliance, cease and desist orders, orders of denial, and other orders issued by the Administrator to carry out the Federal Aviation Act."  14 C.F.R. § 13.20(a).  Where it applies, § 13.20 requires the FAA to provide notice prior to issuing the order and allows the person who was sent notice of an FAA order to request an informal conference or hearing before the order is entered.  *See id.* § 13.20(b),(c).  FAA Order 8900.1 has no such requirement.  Because it proceeded under FAA Order 8900.1, the FAA did not provide Bradshaw prior notice of the order terminating his designation or allow him to request a hearing before entering that order.

consider arguments that a party failed to raise in timely fashion before an administrative agency." (quotation omitted)).

B. FAA Order 8900.1's Termination Procedure

Bradshaw next claims that even if FAA Order 8900.1 applies to the termination of his pilot-examiner designation, his termination should be set aside because the FAA contravened FAA Order 8900.1 in two ways: (1) the FAA did not provide specific reasons for its decision to terminate his designation, and (2) two people involved in the underlying termination decision (Alvaro Gil and Jay Kitchens) had improper roles on the FAA appeal panel.  In order to prevail, Bradshaw must show that the FAA "fell substantially short" of the applicable procedural requirements.  *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003).

1. The Specificity Requirement

First, Bradshaw contends that his termination letter lacked the requisite specificity.  As explained previously, FAA Order 8900.1 provides that "[t]he FAA office manager will provide to the designee, in writing, the decision regarding the termination of a designation, with the reasons cited as specifically as possible."  FAA Order 8900.1, vol. 13, ch.5, § 3, 13-467, para. B.  Bradshaw claims that the termination order was deficient because it "did not specifically state what the FAA

believed occurred with respect to how [he] allowed an applicant to deviate from FAA guidance orders and the C.F.R."

The phrase "as specifically as possible," is, ironically enough, not very specific.  Helpfully, FAA Order 8900.1 includes template termination letters, such as the one described previously for "for-cause" terminations.  FAA Order 8900.1, fig. 13-4.  The template letter thus illustrates the FAA's understanding of what it means for the reasons for termination to be cited "as specifically as possible."  It therefore serves as a guide for FSDO office managers to help them comply with FAA Order 8900.1's specificity requirement.  Accordingly, we agree with the D.C. Circuit that where the pilot examiner's "termination letter adhere[s] to the FAA-prescribed template, it [has] substantially complied with the FAA's internal procedures."  *Sheble*, 755 F.3d at 958.

Here, the record confirms that Bradshaw's termination letter adhered to the template provided in Order 8900.1, and it provided numerous reasons for his termination and included citations to relevant regulations and policy.  Order 8900.1 does not require the FAA to state the various ways in which Bradshaw violated the cited regulations during the June 12 test, merely the reasons for his termination.  Bradshaw's termination letter therefore complied with the FAA's specificity requirements.  *Id.*

14

2. Composition of the Appeal Panel

Bradshaw argues that the FAA's order should be overturned because one appeal panel member—Gil—was involved in the termination decision, and, therefore, he could not serve on the appeal panel pursuant to Order 8900.1.[5]  He further argues that the appeal panel was improper because Kitchens, who was also allegedly involved in the termination decision, "provided significant additional guidance to the appeal panel."  Bradshaw's argument misconstrues the facts: neither Gil nor Kitchens was involved in the underlying termination decision.

To support his argument that Gil's membership on the appeal panel was improper, Bradshaw relies on the June 21 e-mail exchange between Woodcock, Gil, Kitchens, and three other FAA employees.  This e-mail exchange, however, concerned Bradshaw's *renewal* application—not his possible termination.  Without "go[ing] into details," Woodcock explained that an investigation into Bradshaw was underway, and his preliminary conclusion was that Bradshaw certified a pilot applicant without giving a full flight test.  Given that information, Woodcock asked how to proceed with the renewal process for Bradshaw's designation, which was expiring at the end of the month.  Gil replied, explaining that Woodcock should "hold off on the renewal" and tell Bradshaw to cease examinations until

---

[5] Order 8900.1 provides that "[t]he appeal panel will consist of at least 3 persons equivalent to the specialist level or above who were not involved in the original denial or termination decision."  FAA Order 8900.1, Ch. 5, § 3, 13-467, para. F(2).

Woodcock had completed the investigation. Nothing in that e-mail chain indicates that Gil was involved in the decision to terminate Bradshaw's designation: he did not advise Woodcock on how to conduct his investigation of Bradshaw, tell him what would constitute a terminable offense, or even comment on whether Woodcock's preliminary conclusion should result in termination. Bradshaw does not cite to any other evidence that reveals Gil was involved in the termination decision. And with good reason: the FSDO managing officer makes the designation termination decision—not inspectors like Woodcock. *See* FAA Order 8900.1, vol. 13, ch. 5, § 3, 13-467, para. A. And the record does not include any conversation between the FSDO office manager who made the termination decision and a member of the appeal panel. Accordingly, the e-mail chain involving Gil is largely irrelevant to the "termination" decision.

We next turn to Kitchens. As an initial matter, Kitchens was not on the appeal panel. So whatever his involvement may have been at the appeal level (and, based on the record, it appears his role in the appeal process was limited to finding members for the panel), FAA Order 8900.1's appeal-panel member requirement does not apply to him. In any event, nothing in the record indicates that he took part in the underlying termination decision. Bradshaw's reliance on the June 21 e-mail exchange to establish Kitchens's involvement in the termination decision is even more strained than it was to show the same for Gil. Not only does

16

that e-mail chain have nothing to do with the underlying termination decision,
Kitchens did not even respond to it.  Therefore, in terminating Bradshaw, the FAA
did not fall short of Order 8900.1's procedural requirements, much less
substantially so.

C. Constitutional Claims

Bradshaw also takes aim at the constitutionality of FAA Order 8900.1's
termination procedure.  He argues that the FAA denied him due process because it
deprived him of a property interest and a liberty interest without the
constitutionally required notice and hearing, and that the FAA violated his right to
equal protection because other categories of FAA designees are afforded a hearing
before their designation can be terminated.  Neither argument has merit.

1. Violation of Procedural Due Process

Bradshaw claims that the FAA violated his constitutional right to due
process guaranteed by the Fifth Amendment when it terminated his DPE
designation for cause without proper notice and an opportunity to be heard.  The
Fifth Amendment's Due Process Clause provides that: "[n]o person shall . . . be
deprived of life, liberty, or property, without due process of law."  U.S. Const.
amend. V.  To establish a due process violation, the plaintiff must show: (1) that he
possessed a "constitutionally protected interest in liberty or property;" (2) that the
government "deprived [him] of that interest;" and (3) that "the procedures

17

accompanying that deprivation are constitutionally inadequate." *Agility Def. & Gov't Servs. v. U.S. Dep't of Def.*, 739 F.3d 586, 591 (11th Cir. 2013). Here, Bradshaw's due process claim fails on the first prong: based on the Supreme Court's guidance and in accord with other circuit courts that have considered this issue, Bradshaw did not have a property or liberty interest at stake.

### a. Property Interest

The Supreme Court has explained:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it*. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (emphasis added)[6]; *see also Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."). Accordingly, the question here is whether

---

[6] Although *Roth* involved a due process challenge under the Fourteenth Amendment, its analysis of what constitutes a property interest is equally applicable to a due process challenge under the Fifth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 166 (2002) (explaining that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

Bradshaw has a legitimate claim of entitlement to his FAA pilot examiner designation. We hold that he does not.

Although we have not considered whether an FAA pilot examiner designation is a property interest, two other circuits have. In *Fried v. Hinson*, the D.C. Circuit determined that a DPE could not prevail on his due process claim based on the nonrenewal of his pilot examiner designation because "he had no legal entitlement to renewal," and therefore no "cognizable property interest" in the designation. 78 F.3d 688, 692 (D.C. Cir. 1996). In coming to that conclusion, the court reviewed the applicable rules governing FAA designations and found that "those provisions underscore that a pilot examiner serves only as long as the agency thinks appropriate." *Id.* Similarly, in *Greenwood*, the Ninth Circuit concluded that the DPE did not have a valid claim of entitlement to the designation because the FAA had complete discretion in deciding whether to renew the designation and the designee had to "apply for renewal and pass a test, and even then, he was not assured that the [designation] would be renewed." 28 F.3d at 976. Because "[a]ny expectation that the [designation] would be renewed was therefore a unilateral expectation on [the DPE's] part, not a valid claim of entitlement," the court held that the petitioner did not have a property interest in a renewed DPE. *Id.*

We agree with the analysis in *Fried* and *Greenwood*. The applicable statutes and regulations make it clear that Bradshaw does not have a "legitimate claim of

entitlement" to his pilot examiner designation.  49 U.S.C. § 44702(d) authorizes the FAA Administrator to delegate his certificate-issuing authority to private persons, but it also permits the FAA Administrator to terminate that delegation "*at any time for any reason* [he] considers appropriate."  *Id.* § 44702(d)(2) (emphasis added); *see also* 14 C.F.R. § 183.15(b)(6).  Similarly, there is no guarantee that the FAA Administrator will renew the designation upon expiration.  FAA Order 8900.2B, ch. 3, para. 4, 5 (Sept. 23, 2016).  The applicable rules, therefore, provided no basis for Bradshaw to expect or have a legitimate claim of entitlement to his designation.  Moreover, the FAA requires designees to sign a "certificate of designation" acknowledging that "the designation is a privilege, not a right, and that the FAA Administrator can terminate any designation at any time or for any reason he or she deems appropriate."  FAA Order 8900.2B, ch. 2, para. 2.  Thus, "[t]he combination of the rules and the waiver language in the application form operates to preclude any 'legitimate claim of entitlement.'"  *Doe v. Fla. Bar*, 630 F.3d 1336, 1343 (11th Cir. 2011).  Accordingly, we hold that Bradshaw had no property interest in his pilot examiner designation, which means necessarily that his due process challenge fails.  *See Fried*, 78 F.3d at 692; *Greenwood*, 28 F.3d at 976; *see also Lopez*, 318 F.3d at 249 (concluding that the DPE had no property right in his designation because of statutory provisions allowing the FAA Administrator to rescind the Designated Engineer Representative at any time

20

"[c]ombined with Lopez's admission that 'a [] designation is a privilege and not a right[]'").

    b. Liberty Interest

Bradshaw also makes passing arguments that the termination deprived him of two protected liberty interests: his reputation and his ability to gain future employment. Both arguments fail.

First, Bradshaw contends that because he was terminated for cause and the FAA rules bar designees terminated for cause to apply for reinstatement, the FAA stripped him of his liberty to seek future employment. But the right to apply for the same job from which he was terminated does not constitute a liberty interest. *See Roth*, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."). Notwithstanding his designation termination, Bradshaw has the liberty to seek employment anywhere else, even with another government agency, if he so wishes—the FAA bar on hiring for-cause terminated designees applies only to the FAA.[7]

Second, Bradshaw asserts that he "has a liberty interest in his reputation and standing in the aviation community in Florida," which was damaged when his

---

[7] Bradshaw suggests that this bar on rehiring also implicates a property interest in the designation. But he cannot have a property interest in the possibility of a future designation that does not itself constitute a property interest.

designation was terminated.  But harm to "reputation alone" is not a liberty interest "sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Instead, this circuit has imposed a "stigma plus" standard.  As its moniker suggests, that standard "requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436–37 (11th Cir. 1998); *see also Behrens v. Regier*, 422 F.3d 1255, 1261 (11th Cir. 2005) (holding that where a state agent defames someone without "depriving him of any right or status recognized under state law" then the "injury does not rise to the level of a constitutional deprivation"); *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1303 (11th Cir. 2001) (explaining that "injury to reputation itself is not a protected liberty interest").  Here, because there is no deprivation of a property interest or a liberty interest, Bradshaw cannot proceed with his due process claim based on the alleged harm to his reputation.  Moreover, the reasons for his termination were not made public.  Therefore, even though the mere fact that his designation was terminated may cause some in the community to look unfavorably upon him, "[s]ince the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor,

or integrity' was thereby impaired." *Bishop v. Wood*, 426 U.S. 341, 348 (1976)

(quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).[8]

2. Equal Protection

Bradshaw claims that the FAA violated his equal protection rights because it

affords more process to other designees when terminating their designation.[9]

Because the distinction Bradshaw complains of does not rest on a suspect

classification or a fundamental right, rational basis review applies.[10]  *See Estrada*

[8] The D.C. and Ninth Circuit similarly rejected claims that a DPE has a liberty interest in maintaining his designation.  *Fried*, 78 F.3d at 692 (holding that "Fried had no legitimate liberty interest in being renewed" because the non-renewal had not been made public and because "non-renewal neither automatically bars Fried from a broad range of government jobs nor stigmatizes him in a way that would substantially preclude the professional use of his skills."); *Greenwood*, 28 F.3d at 977 (rejecting Greenwood's claim that he had a liberty interest "because his reputation was adversely affected by the non-renewal" noting that there was no evidence in the record of "adverse effect," and there was no "evidence that the FAA purposefully stigmatized him with the dismissal").

[9] Specifically, Bradshaw objects that Designated Manufacturing Inspection Representatives, Designated Engineering Representatives, and Designated Airworthiness Representatives "are allowed to request a meeting as part of the appeal process, are allowed to request that the FAA inspector who recommended termination of the designation be present at that meeting, and are allowed to have their lawyers present at that meeting."  DPEs, on the other hand, are not afforded the opportunity to have a meeting with the appeal panel.

[10] The FAA argued in its response brief that rational basis review applied, and Bradshaw appeared to agree as he stated in his reply brief that "the FAA's purported explanation cannot survive a rational basis standard."  At oral argument, however, despite Bradshaw's concession "that [he] was not a member of a suspect class," he argued for the first time that a "heightened level of scrutiny" should apply because DPEs are treated differently than other groups of designees.  Oral Argument at 9:10–10:35, *Bradshaw v. FAA* (No. 18-14249), http://www.ca11.uscourts.gov/oral-argument-recordings?title=18-14249&field_oar_case_name_value=&field_oral_argument_date_value%5Bvalue%5D%5Byear%5D=&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D=.  Because he did not present that argument in his briefs, we do not consider it.  *See Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) ("[W]e do not consider arguments not raised in a party's initial brief and made for the first time at oral

*v. Becker*, 917 F.3d 1298, 1308 (11th Cir. 2019).  "Under rational basis review, a classification does not violate the Equal Protection Clause so long as 'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  *Id.* at 1310 (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012)).  "[A] classification 'must be upheld against equal protection challenge [sic] if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Id.* at 1310–11 (emphasis in original) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  Bradshaw cannot clear that high bar.

The difference in the termination-decision review process afforded by the FAA to DPEs and other classifications of designees has a rational basis.  As the FAA explained in its response brief:

> In establishing termination procedures for its designated representative, the FAA must balance its need for accurate decisions with its need to adjudicate termination decisions efficiently.  That balance weighs differently for Designation Pilot Examiners than for other types of designees.  Appointing, overseeing and evaluating Designated Manufacturing Inspection Representatives, Designated Engineering Representatives, Designated Airworthiness Representatives, and Organizational designees is more difficult and time consuming than doing the same for pilot examiners.

---

argument." (quotation omitted)); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) ("[W]e do not consider claims not raised in a party's initial brief and made for the first time at oral argument.").

Further, this explanation is borne out by the FAA Orders, which establish multi-layer review systems, with technical input, for appointing those other types of designees. By comparison, such input and multi-layer review is not present for the appointment of DPEs. Instead, the FSDO can appoint anyone who meets the general requirements for a DPE designation. Because the FAA has offered a rational basis for having varying review processes for different classifications of designees, Bradshaw's equal protection claim fails.

In sum, the FAA did not violate the Constitution when it terminated Bradshaw's pilot examiner designation. Nor did it violate its own procedural requirements. Because Bradshaw's arguments to the contrary fail, we deny his petition for review.

**PETITION DENIED.**